Catherine **JACKSON**, on behalf of Herself and All Others Similarly Situated

v.

**METROPOLITAN EDISON COMPANY**, a Pennsylvania corporation.

Civ. No. 71–453.

United States District Court, M. D. Pennsylvania.

June 30, 1972.

Alan N. Linder, York, Pa., Richard A. Hesse, Director National Consumer Law Center, Chestnut Hill, Mass., for plaintiff.

Russell O'Malley, Irwin Schneider, Scranton, Pa., Ryan, Russell & McConaghy, Reading, Pa., for defendant.

J. Shane Creamer, Atty. Gen., Curtis Pontz, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for Commonwealth of Pa.

## MEMORANDUM AND ORDER

NEALON, District Judge.

On October 18, 1971, plaintiff filed a Civil Rights complaint in forma pauperis under 42 U.S.C. § 1983 [1] on behalf of herself and all others similarly situated seeking money damages and declaratory and injunctive relief against the defendant utility. Plaintiff alleges that her constitutional rights were violated when electrical services to her home were summarily terminated without prior notice or hearing on the merits. That same day a temporary restraining order was issued by this court enjoining defendant from terminating plaintiff's service until October 22, the day set for the hearing on the preliminary injunction. However, at the hearing on October 22, because of the short notice given to defendants, it was agreed between the parties that plaintiff's service was to be continued in order to allow defendant to respond to plaintiff's complaint. Subsequently, defendant moved to dismiss the complaint on the grounds that (1) the court lacks subject matter jurisdiction in that the defendant utility did not act under color of state law and (2) the complaint fails to state a cause of action on which relief can be granted. Numerous briefs having been filed, this motion is now before the court for decision.

In her complaint, plaintiff alleges that her service was terminated because she was unable to pay Metropolitan Edison for past due utility bills. Plaintiff disputes the validity of the bill in that she alleges that she is not wholly responsible

[1]. Any question as to the jurisdiction of this court under 28 U.S.C. § 1343 to the extent that it is alleged that a civil rights action lies only for alleged deprivation of personal rights as opposed to property rights was put to rest by the Supreme Court's recent decision in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

for it since one James Dodson, a former co-occupant of the premises, is the party who originally subscribed for the services and had agreed to pay the bill. Finally, plaintiff contends that she has made several tenders of partial payments which were rejected by the utility company.

Metropolitan Edison's tariff, filed with the Pennsylvania Utility Commission, provides that the company, on reasonable notice, may discontinue utility services to a customer for nonpayment of utility bills.[2] However, the company's regulations do not require any type of hearing before the service is terminated. Plaintiff insists that the utility's failure to provide a hearing prior to termination constitutes a denial of due process of law. Plaintiff also alleges that because of her indigency she is unable to pay the bill and thus faces automatic termination, whereas a more affluent person could pay the challenged bill and then subsequently attack its validity. Such disparity of treatment, plaintiff claims, is in violation of the equal protection clause of the Fourteenth Amendment.

■ It is well settled that a complaint which relies on 42 U.S.C. § 1983 must initially establish two elements. First, the conduct complained of must have been done under color of state law. Private action, however wrongful, cannot form the basis for relief under § 1983. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Secondly, the conduct complained of must deprive another of rights, privileges, or immunities secured by the Constitution of the United States. See Adickes, *supra.* It is de-

fendant's position in its motion to dismiss that the complaint is fatally defective as to one of these elements, since they insist that Metropolitan Edison did not act under "color of state law" within the meaning of § 1983.

Although the core concept of "state action" has been frequently discussed by the Supreme Court, an exact definition has never been formulated,

" . . . to fashion and apply a precise formula for recognition of state responsibility . . . is an 'impossible task' which 'This Court has never attempted' . . . Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."

Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

■ Thus, in determining the presence of state action in a particular case, a court must examine the facts and circumstances of that case to see if

"(c)onduct that is formerly 'private' (has) become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action."

Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966).

In essence, the factors upon which plaintiff relies in establishing state action are that (a) the Commonwealth of Pennsylvania has granted Metropolitan Edison, as a privately-owned public utility, a monopoly in the distribution of electricity in the York area and (b) its daily operation is subject to the close supervision and regulation of the Pennsylvania Public Utility Commission. Specifically, plaintiff cites the P.U.C.'s power (1) to regulate and review rates es-

2. In Tariff No. 41 of the Metropolitan Edison Company, filed with the Pennsylvania Public Utility Commission, Rule 15 provides: "Company reserves the right to discontinue its service on reasonable no-

tice and to remove the equipment in case of nonpayment of bill of violation of the Pennsylvania Public Utility Commission's or Company's Rules and Regulations; . . . . "

tablished by the utility;[3] (2) to establish regulations necessary in the supervision of a utility doing business within Pennsylvania;[4] (3) to require that all rules and regulations adopted by the utilities themselves be subject to the approval of the P.U.C.;[5] (4) to provide for an inspection and access to any and all facilities and records of public utilities which the Commission deems necessary;[6] and (5) to prohibit discriminatory practices in rates[7] and services,[8] as demonstrating that the operation of Metropolitan Edison "is so intertwined with the state as to make it inseparable from it." Evans v. Newton, *supra* at 299, 86 S.Ct. 486. In addition, plaintiff maintains that the state is involved with the very activity complained of, i. e. the termination of service, in that Pennsylvania P.U.C. Tariff Regs. VIII provides that

> "Every public utility that [imposes] penalties upon its customers for failure to pay bills promptly shall provide in its filed tariffs a rule setting forth clearly the exact circumstances and conditions in which the penalties are imposed . . . ."

On the other hand, defendant argues that the *overwhelming* weight of authority has held that merely because a private corporation, such as Metropolitan Edison, enjoys an economic monopoly which is supervised and controlled by a state-wide regulatory body does not necessarily bring its *every act* within the purview of Section 1983. *See e. g.* Martin v. Pacific Northwest Bell Telephone Co., 441 F.2d 1116 (9th Cir. 1971); Kadlec v. Illinois Bell Telephone Co., 407 F.2d 624 (7th Cir. 1969); Lucas v. Wisconsin Electric Power Co., 322 F.Supp.

337 (E.D.Wis.1970); Taglianetti v. New England Tel and Tel. Co., 81 R.I. 351, 103 A.2d 67 (1954). Defendant contends that in order for state action to exist in the instant case "the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with *the activity that caused the injury.*" (emphasis added) *See* Martin v. Pacific Northwest Bell Telephone Co., *supra,* 441 F.2d at 1118. Kadlec v. Illinois Bell Telephone Co., *supra Cf.* Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968).[9] I agree.

In Kadlec v. Illinois Bell Telephone Co., *supra,* perhaps the leading case dealing with the question of state action as applied to a regulated public utility, the Seventh Circuit Court of Appeals affirmed a dismissal of a Civil Rights complaint against a telephone company which charged that the company had unconstitutionally terminated certain of plaintiff's commercial telephone services, finding that the termination had not been done under color of state law. The Court held that the acts of the telephone company, taken pursuant to its own regulations, could not be regarded as acts done under color of law simply because the company's regulations had been filed with and approved by an agency of the state. The court elaborated:

> "Motivated by purely private economic interests and pursuant to its *own regulations,* Illinois Bell terminated plaintiffs' Call-Pak service. The only apparent state connection with the termination rests in the fact that defendant company filed its regulations with state authorities; the state in no sense benefited from, encouraged, re-

---

3. 66 P.S. §§ 1141, 1144, 1149.

4. 66 P.S. § 1341.

5. 66 P.S. § 1172.

6. 66 P.S. §§ 1217, 1348.

7. 66 P.S. § 1144.

8. 66 P.S. § 1172.

9. Support for this contention is found in Burton v. Wilmington Parking Author-

ity, *supra,* where the court held that "(t)he State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as *a joint participant in the challenged activity,* which, on that account, cannot be considered to have been so 'purely private' as to fall within the scope of the Fourteenth Amendment." (emphasis supplied)

quested or co-operated in this suspension of service."

". . . . Here, the nexus between the state and defendant's conduct was not sufficient to maintain an action under § 1983."

407 F.2d at 626.[10]

 The only apparent state involvement with the activity complained of here is in Tariff Reg. VIII of the Pennsylvania P.U.C. which requires that every utility that imposes penalties on its customers for failure to pay bills promptly shall clearly set forth in their tariff the exact conditions under which the penalties are to be imposed. However, the mere requirement that Metropolitan Edison clearly spell out any penalties it will impose for non-payment of bills does not clothe Metropolitan Edison with state authority nor transform the defendant's regulations into acts of the state.[11] Rather, the purpose of Tariff Reg. VIII is to insure that public utilities inform their patrons of any possible penalty for failing to pay their bills. As in *Kadlec,* defendant here acted pursuant to its own regulations and out of a purely private, economic motive. No state official participated in the practice complained of, nor is it alleged that the state requested or co-operated in the suspension of service. Thus, plaintiff has failed to make a sufficient showing of state involvement in the activity complained of to prevail against defendant's motion to dismiss. Accordingly, the complaint will be dismissed.

Because of the view I take of this case, it will be unnecessary to consider the merits of plaintiff's contention that her services were terminated in violation of her constitutional rights. I note in passing, however, that plaintiff submitted no evidence indicating disparity of treatment which constituted a denial of equal protection of the law.

---

10. More recently, in another context, the Supreme Court considered the question of whether a state's regulatory scheme constituted state action and noted that the Court has never held that state regulation in any degree whatever would implicate the state in private conduct but would require significant involvement in the proscribed activity. The Court stated that "(h)owever detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination . . (n)or can it be said to make the State in any realistic sense a partner or even a joint venturer in the Club's enterprise". Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 176–177, 92 S.Ct. 1965, 1973, 32 L. Ed.2d 627 (1972).

11. This does not mean, of course, that the State may not, by regulation, require a hearing before service may be terminated by a public utility. While such a regulation may be laudable, it is not constitutionally required.