Wayne JOHNSTON, Plaintiff,

v.

NATIONAL BROADCASTING COMPANY, INC., et al., Defendants.

No. 72-C-1638.

United States District Court,
E. D. New York.

March 21, 1973.

Manton, Giaimo, Pennisi, Deffina & Dowd, P. C., Long Island City, for plaintiff; Thomas V. Deffina, Michael G. Dowd, Long Island City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants National Broadcasting Co., Inc., and Marshall Wellborn; Marshall H. Cox, Jr., James Foster, Miles M. Tepper, New York City, of counsel.

Norman Redlich, Corp. Counsel, New York City, for defendant David Durk.

BARTELS, District Judge.

Defendants National Broadcasting Company, Inc. (NBC), Marshall Wellborn and David Durk have moved this court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for failure to state a claim upon which relief can be granted.

Among unnecessarily prolific and irrelevant allegations, two causes of action emerge: the first, predicated upon 42 U.S.C. § 1983[1] and 42 U.S.C. § 1985,[2]

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 42 U.S.C. § 1985:
"(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;
"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal pro-

alleging that plaintiff Johnston was entrapped by defendants NBC, Silverman, Durk and others into procuring narcotics, for which he was subsequently arrested and now faces various criminal charges in the New York State courts; the second, predicated upon 42 U.S.C. § 1985 and § 1986,[3] alleging that defendants NBC and Wellborn, its lawyer, refused to permit Silverman, an employee of NBC, to talk with Johnston's lawyer, Michael G. Dowd, Esq., about the pending criminal case. Jurisdiction is grounded upon 28 U.S.C. § 1343(3).[4]

Under the first cause of action plaintiff asserts the following as facts:

Defendant Silverman planned to do a television news program for defendant NBC about corruption in the office of the Queens District Attorney, and enlisted the aid of Police Sergeant David Durk of the New York City Police Department, and an undercover policeman known as "Johnny Russo." Their plan was to entrap plaintiff Johnston and one George Freed, a Queens real estate investor, not a party to this action, into violating the law, with the intent thereafter, of compelling these entrapped persons under threat of prosecution for such criminal activity, to offer bribes to members of the office of Queens County District Attorney Thomas Mackell.

Russo and Silverman arranged to be introduced to Johnston as high-ranking members of the Jewish Defense League. After unsuccessfully attempting to persuade Johnston to obtain weapons and high explosives for them, they attempted to induce plaintiff into becoming a so-called "hit man" and to agree to conspire to murder unnamed individuals. Failing again, they finally persuaded plaintiff to assist them in obtaining narcotic drugs predicated upon lengthy entreaties premised upon his friendship with Freed. Johnston "made an effort to locate persons who allegedly could help defendant Silverman and 'Russo' in their quest for narcotic drugs." Thereafter Silverman and Russo were "successful in contacting someone who could supply narcotic

---

tection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

3. "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act

be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."

4. § 1343:
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

drugs to them," and finally obtained narcotic drugs. Shortly thereafter defendants Durk, Silverman and Russo "kidnapped" Freed and, predicated upon threats of prosecution and imprisonment, induced him to offer a bribe to Milton Drucker, Executive Assistant to Thomas J. Mackell, the Queens District Attorney. Wired for sound, Freed offered something of value to Drucker "in return for any information concerning criminal activity by the plaintiff." Drucker refused the bribe and Freed was arrested for attempted bribery and concealment of an eavesdropping device. Immediately thereafter plaintiff Johnston was arrested by defendant Durk and Russo and charged with criminal possession and sale of dangerous drugs. Defendant Silverman's efforts in this plot had the encouragement, authority and consent of defendant NBC.

Under the second cause of action plaintiff alleges the following:

After Johnston's arrest, his lawyer Dowd attempted to arrange an interview with Silverman, who told Dowd that he was willing to speak with him, that he regretted what had happened to plaintiff, that the entire matter had gotten out of hand and that he would attempt to obtain permission from defendant Wellborn, an attorney employed by NBC. Thereafter Silverman advised Dowd that he had been prohibited from speaking to Dowd by defendant Wellborn and other unnamed executives of defendant NBC, "under fear of losing his job with NBC."

Johnston seeks ten million dollars in damages on each cause of action and an injunction on the second cause of action restraining NBC and Wellborn from preventing Silverman from discussing Johnston's criminal case with Dowd.

# I

## *Entrapment*

Johnston contends that upon the facts alleged in his first cause of action, all defendants (except Wellborn, who is not named therein) are liable to him un-

der 42 U.S.C. §§ 1983 and 1985 for entrapping him to commit a crime. To succeed under Section 1983 plaintiff must establish "(1) that he has been deprived of a right, privilege, or immunity secured by the Constitution and laws of the United States; (2) that the defendants subjected plaintiff to this deprivation or 'cause[d]' him to be so subjected; and (3) that the defendants acted 'under color of any statute, ordinance, regulation, custom, or usage, of any State . . . .'" Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969). According to the allegations of the complaint, which are admitted upon this motion, there has been a concert of action between private citizens and New York City Police officers sufficient to constitute the requisite State action. See, e. g., Fulton v. Emerson Electric Co., 420 F.2d 527 (5th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970), and Robeson v. Fanelli, 94 F. Supp. 62 (S.D.N.Y.1950). Defendants contend, however, that entrapping a person into committing a criminal act is no ground for relief under the Federal Civil Rights Act, since freedom from entrapment is not a right, privilege or immunity secured by the Constitution and laws of the United States. Plaintiff contests this assertion, maintaining that such a constitutional right does exist upon the proper analysis of the due process clause in the Fifth and Fourteenth Amendments, citing authorities (Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1955)), which in fact relate only to the defense of entrapment. Plaintiff also relies upon the Fourth Amendment, again citing authorities (Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968)) involving probable cause for arrest. We find the authorities cited inapposite to the point at issue. In fact, we can find no decision justifying the conversion of entrapment into an independent federal cause of

action [5] cognizable under Section 1983 or Section 1985. At least three pertinent federal decisions upon the subject have all rejected the contention that entrapment provides a ground for any relief under the Federal Civil Rights Act. For example, in Jones v. Bombeck, 375 F.2d 737 (3d Cir. 1967), plaintiff accused defendants of conspiracy to entrap or induce him to commit a burglary. In denying recovery the court said:

> "To state a cause of action under the Civil Rights Act it is necessary that there be an allegation that plaintiff was denied or that there was a conspiracy to deny him a constitutional right, privilege or immunity. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Here, at best, all that appellant has alleged is entrapment. While entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation." 375 F.2d at 738.

Likewise, both Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa.1968), and Mack v. Lewis, 298 F.Supp. 1351 (S.D.Ga.1969), reject a *constitutional* claim of entrapment. 42 U.S.C. § 1983 by its terms protects only "rights, privileges, or immunities secured by the Constitution and laws." It does not protect against deprivation of rights granted by state laws. Egan v. City of Aurora, Ill., 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961); Sigler v. Lowrie, 404 F.2d 659, 662–63 (8th Cir. 1968), cert. denied, 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969).

■■■ Entrapment as a defense to a criminal prosecution, is a recognition of the basically equitable principle that after government officials implant in the mind of an innocent person the disposition or desire to commit an offense and induce its commission, the government cannot prosecute the accused. United States ex rel. Hall v. Illinois, 329 F.2d 354 (7th Cir.), cert. denied, 379 U.S. 891, 85 S.Ct. 164, 13 L.Ed.2d 94 (1964). In support of this principle various rationales have been offered, including estoppel, the innocence of an entrapped defendant, and the integrity of the courts. Whichever rationale is adopted however, the above authorities clearly hold that there is no basis for equating the defense of entrapment to a violation of plaintiff's constitutional rights. This conclusion has also been reached in the context of various *habeas corpus* proceedings in the federal courts. See, e. g., Benson v. Carter, 396 F.2d 319 (9th Cir. 1968), cert. denied, 393 U.S. 1080, 89 S. Ct. 852, 21 L.Ed.2d 773 (1969); United States ex rel. Hall v. Illinois, *supra;* LeDent v. Wolff, 334 F.Supp. 64 (D. Nev.1971), vacated on other grounds, 460 F.2d 1001 (8th Cir. 1972). Section 1985(3), 42 U.S.C., tracks the language of the Fourteenth Amendment to the Constitution and only protects federal rights, privileges, and immunities. Ruark v. Schooley, 211 F.Supp. 921 (D. Colo.1962); *cf.* Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Where the states have discharged their responsibility to prevent the lawless enforcement of the criminal laws, federal intervention is unnecessary. See United States ex rel. Hall v. Illinois, *supra.* Since the claim of entrapment does not state a violation of constitutional rights, plaintiff's first cause of action, based upon Sections 1983 and 1985, must be dismissed.

## II

### *No Interview Claim*

Plaintiff rests his second cause of action upon the refusal of defendants NBC and Wellborn to permit Johnston's law-

---

5. Plaintiff has cited Banks v. United States, 249 F.2d 672 (9th Cir. 1957), for the proposition that entrapment is a denial of due process. But that Court categorically retreated from that position in Banks II, 258 F.2d 318 (9th Cir. 1958), and in Benson v. Carter, 396 F.2d 319 (9th Cir.1968), cert. denied, 393 U.S. 1080, 89 S.Ct. 852, 21 L.Ed.2d 773 (1969).

yer to interview Silverman, claiming a violation of Sections 1985 and 1986, 42 U.S.C. He asserts that these two defendants "conspired to obstruct, hinder and interfere with the due course of justice in the State of New York" tracking the language of 42 U.S.C. § 1985(2) which authorizes a suit for damages where

> ". . . . two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

■ Section 1985 like Section 1983 of 42 U.S.C. protects only rights embodied in the Constitution and laws of the United States. Unlike Section 1983 however, Section 1985 fully encompasses the conduct of private persons, without any showing of state action. See Griffin v. Breckenridge, *supra* where the Supreme Court made it clear that the only conspiracies reached by Section 1985(3) are those entered "with intent to deny to any citizen the equal protection of the laws." Writing for the Court, Mr. Justice Stewart noted:

> "That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' Id., at 485. The constitutional shoals that would lie in the path of interpret-

ing § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose— by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra*, at 1797. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 101–102, 91 S.Ct. at 1798.

See Kletschka v. Driver, *supra*, and Post v. Payton, 323 F.Supp. 799 (E.D.N.Y. 1971).

■■ While *Griffin* only treated § 1985(3), the same language ("intent to deny to any citizen the equal protection of the laws") is found in § 1985(2) and should we believe, be read the same way. Johnston does not claim that he has been denied "the equal protection of the laws" as that phrase is read in *Griffin;* he has not alleged any invidiously discriminatory motive, racial or otherwise class-based. He has in short, failed to plead any facts sufficient to support an allegation under Section 1985(2).[6] Plaintiff also bases his second cause of action upon an alleged violation of Section 1986 of 42 U.S.C. But no claim for relief under Section 1986 will lie unless a valid claim has first been established under Section 1985. We reiterate the statement in Post v. Payton, *supra*, 323 F.Supp. at 802, that:

> "Section 1986 is a derivative of Section 1985 and provides a remedy for persons injured by the neglect or refusal of those having power to do so to prevent the wrongs specified in

6. We note, in passing, that insofar as the first cause of action likewise rests upon § 1985, it too failed to allege any invidiously discriminatory motive.

Section 1985. Having failed to state a claim under Section 1985, it follows that plaintiffs assert no ground for relief under Section 1986."

Since no such claim was established under Section 1985, the second cause of action under Section 1986 must fail.

### B

■ This conclusion, however, does not end our consideration of the second cause of action. The claim will not lose its viability if it can be deemed an action under Section 1983. In the words of Judge Smith in New York State Waterways Association, Inc. v. Diamond, 469 F.2d 419 (2d Cir., 1972): "While plaintiffs' complaint is hardly a model of compliance with the Federal Rules of Civil Procedure 8(a)(1) requirement of a 'short and plain' statement of the claimed jurisdictional basis of a suit, it is our duty to read it liberally, to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." Id., at 421. From a reading of the entire complaint, we believe the allegations can fairly be interpreted as charging the defendants NBC and Wellborn as acting in concert with defendant Durk and Russo to deprive plaintiff of an opportunity to interview Silverman in preparation of his defense in his criminal prosecution. In effect, the complaint indicates a deprivation by these defendants of plaintiff's Sixth Amendment right to prepare an adequate defense in his criminal case. While it is true that any witness has the right to refuse to be interviewed if he so desires, Byrnes v. United States, 327 F.2d 825, 832 (9th Cir.), cert. denied, 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964), it is equally true that the State may not bar a prospective witness from speaking with defense counsel, when and if such witness so desires. Gregory v. United States, 369 F.2d 185 (D.C.Cir. 1966). See also Canon 39 of the Canons of Professional Ethics, making explicit the propriety of interviews with any witness, *pro* or *con*, without the consent of the opposing side. Compare Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In Gregory v. United States, *supra*, 369 F.2d at 188, Judge Wright remarked:

"Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which, not only the statute, but elemental fairness and due process required that he have."

Similarly, in Coppolino v. Helpern, 266 F.Supp. 930, at 935 (S.D.N.Y.1967), the court observed:

"We merely say that, as to interviewing a prospective prosecution witness, our constitutional notions of fair play and due process dictate that defense counsel be free from obstruction, whether it come from the prosecutor in the case or from a state official of another state acting under color of law."

■ Thus, we conclude that in view of the charge outlined, although vaguely, in the second cause of action in the complaint, plaintiff has set out a claim upon which relief can be granted. We accordingly deny defendants' motion to dismiss the complaint.

It is so ordered.