**Guy CONDOSTA**

v.

**VERMONT ELECTRIC COOPERATIVE, INC., et al.**

**Civ. A. No. 73-206.**

United States District Court, D. Vermont.

Sept. 9, 1975.

**360**

Michael H. Lipson, Vermont Legal Aid, Inc., Burlington, Vt., Nancy E. Kaufman, Montpelier, Vt., for plaintiff.

Richard M. Finn, Montpelier, Vt., for all defendants except Vt. Electric Co-op.

Dick, Hackel & Hull, Rutland, Vt., for defendants.

## AMENDED MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

This is a civil rights action brought by the plaintiff against the defendants as a result of the termination of the plaintiff's electric service for nonpayment of a disputed bill. The plaintiff seeks declaratory and injunctive relief, as well as money damages, under 42 U.S.C. §§ 1983, 1985(2) and 1986 (1970). Several defendants have moved to dismiss the complaint against them. Vermont Electric Cooperative, Inc., (hereafter VEC) moved for judgment on the pleadings, and the defendant Albert Ravenna has moved for severance of the claim against him. Each motion will be considered separately.

### I—Motions to Dismiss

Defendants William A. Gilbert, Daniel B. Ruggles III, the Vermont Public Service Board and Kimberly B. Cheney have each moved to have the complaint against them dismissed.[1] For the reasons which follow, the motions to dismiss are granted to this extent: (1) the complaint against the Vermont Public Service Board (hereafter PSB) as a government agency, (2) the § 1985(2) claim against defendants Gilbert and Ruggles, (3) the § 1983 claim asserted against defendants Gilbert and Ruggles insofar as relief by way of a pecuniary award is sought, and (4) the § 1986 claim against the defendant Cheney. However, the motions to dismiss of the defendants Gilbert and Ruggles are denied in that aspect of the complaint based on § 1983 which seeks declaratory relief against them in their individual and official capacities.

---

1. Defendants Gilbert and Ruggles are being sued individually and in their capacity as commissioners of the Vermont PSB. Defendant Gilbert is also being sued in his capacity as chairman of the PSB.

Defendant Cheney is being sued individually and in his capacity as the Attorney General for the State of Vermont.

## A. Defendant Vermont Public Service Board

The plaintiff alleges that the defendant PSB conspired to violate and violated his due process and equal protection rights as guaranteed by the Fourteenth Amendment by denying the plaintiff a hearing prior to the termination of his electric service. On the strength of this claimed deprivation, the plaintiff seeks declaratory relief and money damages against the PSB under 42 U.S.C. §§ 1983 and 1985(2) (1970).[2]

Ordinarily the disposition of a federal suit against the PSB would require a determination by this Court of whether or not PSB is, in actuality, an "alter-ego" of the state, with the State being the real party in interest. *George R. Whitten, Jr., Inc. v. State University Construction Fund*, 493 F.2d 177, 179–180 (1st Cir. 1974). This inquiry would give rise to Eleventh Amendment considerations and questions of sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ However, we need not reach these questions here for the reason that the PSB is not a "person" within the meaning of the Civil Rights Statutes. *Rosado v. Wyman*, 414 F.2d 170, 178 (2d Cir. 1969), *rev'd on other grounds*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Sykes v. California*, 497 F.2d 197, 201 (9th Cir. 1974); *Surowitz v. New York City Employees' Retirement System*, 376 F.Supp. 369, 371 (S.D.N.Y. 1974).[3] Since the plaintiff's complaint fails to state a claim upon which relief can be granted against the PSB, its motion to dismiss must be granted.

## B. Defendants Gilbert and Ruggles

The plaintiff claims that these defendants, while members of the PSB, engaged in a conspiracy that violated his due process and equal protection rights in denying him a hearing prior to the termination of his electric service. The plaintiff requests declaratory relief and money damages against the defendants in both their official and individual capacities under 42 U.S.C. §§ 1983 and 1985(2) (1970).[4]

■ A claim for damages asserted against a state officer in his official capacity, is, in effect, an action against the State, which is barred by the Eleventh Amendment. *Edelman, supra* at 662–663, 94 S.Ct. 1347. A state may waive its sovereign immunity; Vermont has waived state immunity within the limits of the insurance coverage of its employees.[5] However, this

---

2. At the hearing on PSB's motion to dismiss, the plaintiff requested permission to amend his complaint against PSB to allege a direct action based on the Fourteenth Amendment, with jurisdiction founded on 28 U.S.C. § 1331 (1970), due to the recent decision of *Brault v. Town of Milton*, No. 74–2370 (2d Cir. Feb. 24, 1975).

 Permission to so amend the complaint is denied until such time as the *Brault* decision is rendered, following the rehearing; *en banc* by the Second Circuit. Should that decision be favorable to the plaintiff's position, his request to amend his complaint may be raised anew at that time.

3. The plaintiff conceded this point at the hearing; however, he subsequently revoked that concession, citing *Forman v. Community Services, Inc.*, 500 F.2d 1246 (2d Cir. 1974). Although that opinion stated by way of dictum that agencies are "persons" under the Civil Rights Act, the cited authority for that statement was *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir. 1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1971), and *Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968). Neither of those two cases squarely faced the issue of whether the defendant was a "person" under the Civil Rights Act; and, furthermore, the court in *Holmes* stated clearly that the N.Y.C. Housing Authority was a public corporation. *Holmes, supra* at 263. For these reasons, this Court declines to follow *Forman* and relies instead on the cases cited.

4. Defendant Gilbert is being sued in two official capacities; as commissioner of the PSB and as chairman of the PSB. As is evident from subsequent discussion herein, this twofold official capacity is of no consequence to the present motions.

5. 29 V.S.A. §§ 1401 & 1403 (1972).

statutory waiver does not extend to suits in federal court. *Miller v. Vermont*, 201 F.Supp. 930 (D.Vt. 1962); *Lewis v. Vermont*, 289 F.Supp. 246 (D.Vt.1968). Therefore, the complaint fails to state a cause of action upon which relief in the form of money damages can be granted against defendants Gilbert and Ruggles in their official capacities as commissioners of the PSB.

■■ Actions for declaratory relief against a state officer in his official capacity are not to be construed as suits against the state barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Williams v. Eaton*, 443 F.2d 422, 428 (10th Cir. 1971).[6] The plaintiff's amended complaint alleges sufficient facts to meet the requisites of a § 1983 action to the extent that the plaintiff seeks declaratory relief against defendants Gilbert and Ruggles in both their official and individual capacities.[7] Consequently, their motions to dismiss in this respect are denied.

■ The plaintiff's § 1985(2) complaint is fatally deficient on its face because it fails to allege that the defendants' violation of his constitutional rights was the product of any class-based discrimination. *Johnston v. N.B. C.*, 356 F.Supp. 904, 909 (E.D.N.Y. 1973).[8]

In construing § 1985(3), the Supreme Court held:

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. *Griffin v. Brecken-*

*ridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnote omitted).

The same construction must be given the same language in § 1985(2). The § 1985(2) claim against defendants Gilbert and Ruggles is dismissed.

There remains to be considered only the § 1983 complaint for money damages against these two defendants in their individual capacities. The defendants contend that judicial immunity bars the granting of any such relief.

■ The members of the PSB often perform judicial functions. They are:

> [C]lothed with judicial power to entertain proceedings and determine the facts upon which the existing laws shall operate in a controversy between consumers and the public service corporation . . . . In the exercise of this judicial function the public service board has the authority and the duty to investigate any claimed unlawful act adversely affecting a consumer served by a utility subject to its supervision. *North v. City of Burlington Electric Light Department*, 125 Vt. 240, 214 A.2d 82 (1965).[9]

Since the plaintiff's claim for money damages is based on the failure of the commissioners to grant him a hearing, he seeks to impose liability on Gilbert and Ruggles for discretionary inaction on their part. It is clear that such discretionary inaction on the part of PSB commissioners is protected under the doctrine of quasi-judicial immunity. *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972); *Gilbert v. Godnick*, No. 75–55 (D.Vt. May 22, 1975); *see also, Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (judicial immuni-

---

6. *Accord, Klein v. New Castle County*, 370 F.Supp. 85 (D.Del.1974) (declaratory relief against county officials granted).

7. *Kletschka v. Driver*, 411 F.2d 436, 447 (2d Cir. 1969); *Griffin v. Beckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

8. *Accord, Hahn v. Sargent*, 388 F.Supp. 445, 449 (D.Mass.1975); *Phillips v. Singletary*,

350 F.Supp. 297, 301–303 (D.S.C.1972); *McIntosh v. Garofalo*, 367 F.Supp. 501, 505–506 (W.D.Pa.1973).

9. *See McTighe v. New England Telephone & Telegraph Co.*, 216 F.2d 26, 29 (2d Cir. 1954); *Trybulski v. Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 20 A.2d 117 (1941).

ty); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (legislative immunity).

 The answers to interrogatories filed by defendants VEC and its manager, Walter Cook, state that VEC:

> [N]ever disconnects a disputed bill until such time as the dispute is resolved . . . . [T]he Public Service Board ordered Vermont Electric Cooperative, Inc., to follow its Tariff and to disconnect the electrical service of the Plaintiff . . . .

The plaintiff contends that this action, if taken by defendants Gilbert and Ruggles, was beyond the scope of their authority and thus cannot be protected by the doctrine of quasi-judicial immunity. However, a distinction must be made under Civil Rights Act cases between actions taken in clear absence of authority as distinguished from those done in excess of jurisdiction.[10] *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351–352, 20 L.Ed. 646 (1871); *Bauers v. Heisel,* 361 F.2d 581, 590–591 (3rd Cir. 1966), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). Since defendants Gilbert and Ruggles have jurisdiction in all matters respecting "The manner of operating and conducting any business subject to supervision under this chapter," 30 V.S.A. § 209(3) (1972), their alleged directive to the utility VEC to terminate the plaintiff's electric service cannot be held to have been taken in clear absence of authority. *Bradley, supra.* Thus, the defendants Gilbert and Ruggles are protected by quasi-judicial immunity. Accordingly, that aspect of

the plaintiff's § 1983 complaint which seeks to recover money damages against them as individuals is dismissed.

### C. *Defendant Cheney*

The plaintiff seeks declaratory relief and money damages against the defendant Cheney, individually and in his capacity as Attorney General for the State of Vermont, under 42 U.S.C. § 1986 (1970).[11] The plaintiff's claim is based on the alleged failure of defendant Cheney to investigate the plaintiff's charge that he was being deprived by the PSB and VEC of his constitutional right to a hearing.

 In order for an action under § 1986 to lie, the plaintiff must sufficiently establish a violation of § 1985. *Turner v. Baxley,* 354 F.Supp. 963, 973 (D.Vt.1972); *Johnston, supra* at 909–910. Section 1986 refers specifically to wrongs "conspired to be done, and mentioned in section 1985." As previously discussed, the plaintiff's § 1985(2) claim is deficient due to the failure to allege the essential element of class-based discrimination; therefore, the § 1986 claim against the defendant Cheney must likewise be dismissed.

### II—Motion for Judgment on the Pleadings

The plaintiff's complaint requests injunctive and declaratory relief and money damages against the defendant VEC under 42 U.S.C. §§ 1983 and 1985(2) (1970) and under Vermont common law.[12] VEC has filed a motion request-

---

10. This alleged act of ordering the disconnection of the plaintiff's service was also a discretionary one, falling within the commissioners' judicial function to determine what action should be taken in the particular situation then presented.

11. Section 1986 provides:
 Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refus-

es so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . . .

12. The complaint against Walter Cook, as manager of VEC, was dismissed with the plaintiff's consent at the hearing.
 The Court grants the plaintiff's motion to amend his complaint to assert a pendent, Vermont common law claim against the defendant VEC. The Court also dismisses on

**364**

ing judgment on the pleadings on the basis of two alternative theories: (1) that the defendant VEC did not act "under color of state law" when terminating the plaintiff's electric service,[13] and (2) that electric service does not constitute "property" within the meaning of the Fourteenth Amendment. We disagree, and deny VEC's motion for judgment on the pleadings.

■ One of the requisite elements of a § 1983 cause of action is that the defendants acted under color of state law. 42 U.S.C. § 1983 (1970); *Kletschka, supra* at 447. In the recent decision of *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the Supreme Court found that the action of a privately owned and operated Pennsylvania corporation, with a certificate of public convenience, which was subject to extensive regulation by the Pennsylvania Public Utility Commission, was not acting under color of state law when it terminated the electric service of one of its customers. The Court stated that the appropriate test in that situation for determining whether that utility's conduct constituted state action under the Fourteenth Amendment was:

> (W)hether there was a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Jackson, supra* at 351, 95 S.Ct. at 453.

In finding that such a nexus did not exist, the Court held that the granting of a monopoly status by the state, the nature of the service provided,[14] and the *pro forma* approval of the utility's tariff providing for the method of termination under attack, were together insufficient to transform the action of Metropolitan Edison Co. into that of the State of Pennsylvania. *Jackson, supra* at 351–357, 95 S.Ct. 449. We believe that the facts herein alleged are sufficiently distinguishable from those in *Jackson* to find that state action is adequately found on the face of the pleadings.

■ Mr. Justice Rehnquist, in refuting Jackson's contention that the Pennsylvania Commission's approval of Metropolitan Edison's termination practice was state action, clearly indicated that a different situation arises when the state regulatory agency has ordered the termination:

> Approval by a state utility commission of such a request from a regulated utility, *where the Commission has not put its own weight on the side of the proposed practice by ordering it,* does not transmute a practice initiated by the utility and approved by the Commission into "state action." *Jackson, supra* at 357, 95 S.Ct. at 456 (emphasis added).

In the case at hand, VEC has admitted that it terminated the plaintiff's electric service pursuant to instructions from the PSB.[15] Furthermore, the plaintiff alleges that the PSB was intimately in-

---

its own motion the § 1985(2) claim against VEC for the reasons stated in Part I, Subsection B of this opinion.

13. VEC's memorandum in support of its motion argues that no hearing is required prior to termination of electric service under *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). However, that case held that the actions of the defendant, in terminating the plaintiff's electric service, were not state action under the Fourteenth Amendment. The Court specifically declined to reach the issue of whether a hearing was required prior to termination. *Jackson, supra* at 359, 95 S.Ct. 449. Therefore, for purposes of this mo-

tion, this Court will presume that the defendant VEC wished to contend the issue of state action, rather than that stated in its memorandum.

14. The plaintiff had contended that the defendant corporation performed a public function. The Court rejected that contention, stating that under Pennsylvania law, the furnishing of utility service was not a state or municipal function. *Jackson, supra* at 352–353, 95 S.Ct. 449.

15. VEC stated this specifically in Paragraphs 9 and 10 of its affirmative defenses in its January 7, 1974, answer to the plaintiff's initial amended complaint. It omitted such an allegation in its more recent answer to

volved in the negotiations between him- self and VEC prior to the termination of his service. Such an allegation stands in direct contrast to the findings of the lower courts in the *Jackson* case that no state official participated or cooperated in the termination there challenged. *Jackson v. Metropolitan Edison Co.*, 348 F.Supp. 954, 958 (M.D.Pa.1972), *aff'd* 483 F.2d 754, 758 (3rd Cir. 1973). On these bases, we find that the pleadings allege a "sufficiently close nexus" be- tween the PSB and the action of VEC that VEC's action may, at this stage of the proceedings, be "fairly treated as that of the State itself." *Jackson, supra* at 351, 95 S.Ct. at 453.

Moving on to a consideration of VEC's second theory, the Court con- cludes that electric service does consti- tute "property" within the meaning of the Fourteenth Amendment. In discuss- ing this issue of what constitutes prop- erty under the Fourteenth Amendment, the Supreme Court has stated:

> To have a property interest in a bene- fit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives . . . . *Board of Regents v. Roth*, 408 U.S. 564, 577, 92

S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

That the plaintiff relies upon electric service in his daily life cannot be ques- tioned; his ability to obtain heat in the winter, refrigeration and cooking of his food, and light by which he can see at night is dependent upon his receipt of electric service. Probably no other sin- gle utility service is so vital to this plaintiff's day-to-day existence. Fur- thermore, under Vermont law, the plain- tiff also has a legitimate claim of enti- tlement to electric service:

> A . . . corporation engaged in the business of . . . transmit- ting in this state electric energy . . . and distributing it for heat- ing, lighting or power purposes or for any other public use . . . *shall sell and distribute the same to any and all persons* . . . that desire to use the same within this state . . . . 30 V.S.A. § 2801 (1972) (emphasis added).

As with the entitlement to routes for airlines, channels for television stations and pension and social security benefits, *see Goldberg v. Kelly*, 397 U.S. 254, 262 n. 8, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), this plaintiff's entitlement to electric service is subject to protection as a property right.[16] In legal contem- plation—

> "[E]lectricity . . . is property capable of ownership and of sale, and

---

the plaintiff's second amended complaint. In addition, VEC, through its manager, Walter Cook, made this statement under oath in its answer to plaintiff's interrogatory # 84(b).

Since the Court is not treating this motion as one for summary judgment under *Fed.R. Civ.P.* 56, it is restricted to the considera- tion of allegations in the pleadings. And, ordinarily, VEC's more recent answer would supersede that filed on January 7, 1974. *Phillips v. Murchison*, 194 F.Supp. 620, 622 (S.D.N.Y.1961). However, because VEC's more recent answer was filed subsequent to the hearing on the motion for summary judgment and after the significance of its earlier admission had become apparent, it would be overly technical for this Court to refuse to take notice of VEC's earlier an- swer under a rigid application of the Feder- al Rules. *Fed.R.Civ.P.* 1.

16. In finding that electric service is property within the meaning of the Fourteenth Amendment, the Court intimates no view as to the nature of due process protection which must be afforded the plaintiff prior to the termination of his service:

> The extent to which procedural due proc- ess must be afforded the recipient is influ- enced by the extent to which he may be "condemned to suffer grievous loss," . . . and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Goldberg, supra* at 262–263, 90 S.Ct. at 1017.

*Compare Goldberg, supra; Board of Re- gents, supra; Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

it may be the subject of larceny." 26 *Am.Jur.* 2d *Electricity, Gas & Steam* § 1 (1966).

For these reasons, the defendant VEC's motion for judgment on the pleadings is denied.

### III—Motion for Severance

The defendant Albert Ravenna, has moved to sever the claim against him. The plaintiff alleges that Ravenna, who is a state policeman stationed in Brattleboro, helped VEC to disconnect the plaintiff's electric service. The only relief requested under 42 U.S.C. § 1983 (1970) is in the form of an injunction enjoining Ravenna from assisting in the termination of electric service without a court order.

▉▉▉▉ Although the plaintiff indicates that he has no objection to Ravenna's motion, the Court sees no reason why severance should be granted and, therefore, denies the motion. Under *Fed.R.Civ.P.* 21, the determination of this motion is within the Court's discretion. *Fair Housing Development Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D. N.Y.1972). Since the claim asserted against the defendant Ravenna clearly arises out of the same transaction or occurrence (i. e. the disconnection of the plaintiff's electric service) and since there will be common issues of law and fact, this Court finds that proper joinder exists. *See* 7 C. Wright, *Federal Practice & Procedure* (Civil) § 1683 (1972). Therefore, in the interests of judicial economy, *Fed.R.Civ.P.* 1, the case against all the defendants shall be tried in one action.

Accordingly, it is ordered: [17]

1. *That defendant Public Service Board's motion to dismiss is granted;*

2. *That the plaintiff's motion to amend his complaint to allege a Fourteenth Amendment claim against the Public Service Board is denied without prejudice;*

3. *That the plaintiff's § 1985(2) claim against defendants VEC, Gilbert and Ruggles is dismissed;*

4. *That the plaintiff's § 1983 claim insofar as it seeks money damages against the defendants Gilbert and Ruggles is dismissed;*

5. *That the motions to dismiss of defendants Gilbert and Ruggles, insofar as they relate to the plaintiff's request for declaratory relief under § 1983, are denied;*

6. *That defendant Cheney's motion to dismiss is granted;*

7. *That the plaintiff's motion to amend his complaint to assert a pendent, Vermont common law claim against the defendant VEC is granted;*

8. *That the defendant VEC's motion for judgment on the pleadings is denied;*

9. *That the defendant Ravenna's motion for severance is denied; and*

10. *That this case shall be set for a hearing on the plaintiff's request for a preliminary injunction, and all counsel are to provide the Court with memoranda supporting their respective positions if they have not already done so.*

---

The determination of that issue cannot be made until full briefing and argument by counsel, which is unavailable at present. We simply find at this point that the plaintiff's interest in electric service is sufficiently necessary "[T]o provide a minimally decent environment," *Fuentes, supra,* at 89, 92

S.Ct. at 1999 and, therefore, that VEC is not entitled to judgment on the pleadings.

17. This AMENDED MEMORANDUM and ORDER supersedes the Memorandum and Order originally filed in this cause on July 7, 1975, and withdrawn on August 11, 1975.