25 F.3d 1048
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 James T. GIOVANETTI, D.D.S.; and Patricia Ann Giovanetti,
Plaintiffs-Appellants,
v.
Nicholas J. TOMASI, D.D.S.; Wally McLaughlin; Robert L.
Schroeder, D.D.S.; and Omar Whisman; Defendants-Appellees.
 No. 93-3555.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1994.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The Ohio State Dental Board (the "Board") suspended plaintiff James T. Giovanetti's license to practice dentistry for four months. Giovanetti and co-plaintiff Patricia Ann Giovanetti, his wife, allege that during the suspension, members of the Board conspired to "entrap" Dr. Giovanetti into practicing so that the Board would have grounds to revoke Dr. Giovanetti's license. Plaintiffs sued members of the Board, as individuals, requesting one million dollars in compensatory and punitive damages for violations of various constitutional and state statutory rights. The District Court granted defendants' motion to dismiss for failure to state a claim for the reason that defendants were entitled to qualified immunity. For the reasons stated below, we affirm the judgment of the District Court.
 
 I.
 
 2
 While Dr. Giovanetti was serving a four-month suspension of his dental license, he was not permitted to practice dentistry. In their complaint, plaintiffs allege that in order to create cause for the revocation of Dr. Giovanetti's license, defendants "entrapped" Dr. Giovanetti into violating the terms of his suspension. On February 1, 1988, defendant Robert Schroeder, a Board investigator, phoned Dr. Giovanetti and pretended to be a person in need of denture repairs. Schroeder acted as if he were leaving on a trip the next day and needed the repairs done immediately. An undercover agent posing as the purported patient then appeared at Dr. Giovanetti's office. The doctor made the repair and collected payment for his services. The Board thereafter revoked Dr. Giovanetti's license for violating the terms of his suspension. On February 3, 1988, a criminal complaint was filed against Dr. Giovanetti, which charged him with practicing dentistry without a license, in violation of Ohio Revised Code ("O.R.C.") Sec. 4715.09(a).
 
 
 3
 Plaintiffs filed a complaint against Nicholas Tomasi, Secretary of the Board; Omar Whisman, Executive Director of the Board; and Wally McLaughlin and Robert Schroeder, Board investigators. Plaintiffs charged defendants with violations of federal civil rights laws; violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; violations of state laws and provisions of the Ohio Constitution. The District Court held that because defendants had been sued in their individual capacities for money damages and because neither the State of Ohio nor the Board itself were joined as defendants, the Eleventh Amendment was no bar to the action. The court also held that defendants were not absolutely immune from suit because their investigative actions, including the alleged entrapment, were not of a quasi-judicial or a quasi-prosecutorial nature.[1] See Butz v. Economou, 438 U.S. 478 (1978). The court viewed defendants' investigative actions as discretionary.[2] It then held that because defendants were performing a discretionary function, they were entitled to qualified immunity, which protects them from suits for civil damages. The court then granted defendants' 12(b)(6) motion to dismiss and dismissed plaintiffs' pendent state claims. Plaintiffs timely appealed.
 
 II.
 
 4
 It is well established that "[g]overnment officials performing discretionary functions are afforded qualified immunity, shielding them from civil damages, as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)), cert. denied, 488 U.S. 1007 (1989). That defendants were carrying out a discretionary function within the scope of their official duties when investigating Dr. Giovanetti is undisputed. As the District Court explained:
 
 
 5
 To be shielded by qualified immunity ... Defendants' alleged actions must have involved the performance of a discretionary function of the Dental Board. The Ohio State Dental Board's functions are defined in Chapter 4715 of the Ohio Revised Code. O.R.C. Sec. 4715.30 gives the Board the power to discipline dentists by several means, including the suspension and revocation of dental licenses. It also authorizes the Board to investigate possible wrongdoing by dentists. Section 4715.04 permits the Board to "employ such ... investigators ... as it deems necessary to enforce section 4715.01 to 4715.35." The Board may also "revoke the license ... if it determines that the holder has not met the requirements of the probation." O.R.C. Sec. 4715.30. Given these statutory provisions, Defendants' use of an investigator to test whether Plaintiff was violating his probation was an activity within their discretionary function as Board members.
 
 
 6
 Dist.Ct.Op. at 10-11; Joint App. at 104-05.
 
 
 7
 We next address whether defendants violated any clearly established statutory or constitutional right. The Supreme Court has instructed that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 1793 (1991). Plaintiffs assert that defendants' conduct "violates fundamental fairness, shocks the universal sense of justice, and is so truly outrageous, intentional and egregious that such officials would have known that they were violating [clearly established statutory or constitutional] rights." Plaintiffs' Br. at 7.
 
 
 8
 In United States v. Brown, 635 F.2d 1207 (6th Cir.1980), we recognized the defense of "outrageous government misconduct." This defense arose out of two Supreme Court cases, United States v. Russell, 411 U.S. 423 (1973) and Hampton v. United States, 425 U.S. 484 (1976). In Russell, the Court noted that the defense of entrapment was unavailable to a defendant who was predisposed to commit a crime, but held out the possibility that due process might forbid truly outrageous conduct even if a defendant was predisposed. Russell, 411 U.S. at 431-32. In Hampton, five justices left open this possibility of a due process challenge for outrageous conduct under Russell. Hampton, 425 U.S. at 495 (Powell and Blackmun, JJ. concurring); Id. at 497 (Brennan, Stewart, and Marshall, JJ., dissenting). While we and other circuits have recognized this defense, see e.g., United States v. Kaminski, 703 F.2d 1004 (7th Cir.1983), no courts that we are aware of have authorized its use in a civil action or as the basis for a section 1983 action. Further, we have found no case in which conduct similar to that of defendants was held to be so outrageous as to violate due process. Here, there was one request for emergency assistance and one visit; we do not view this conduct as overreaching or egregious.
 
 
 9
 As plaintiffs alleged that Dr. Giovanetti was not predisposed to practice without a license, their main argument appears to be that defendants entrapped the doctor.[3] Plaintiffs conceded in the District Court that entrapment is not a defense in a civil action. District Ct.Op. at 11; Joint App. at 105. They contend, however, that they are using entrapment offensively rather than defensively to impose liability on defendants in this civil action. This distinction does not change the fact that plaintiffs have failed to establish the violation of any constitutional right. The only decision in this Circuit addressing this issue holds that "there is no federal constitutional right to be free from entrapment." Schieb v. Humane Soc. of Huron Valley, 582 F.Supp. 717, 725 (E.D.Mich.1984).[4] Cf. Russell, 411 U.S. at 433 (entrapment defense "is not of a constitutional dimension"). The Schieb court also observed that "a claim of entrapment does not state a cause of action under 42 U.S.C. Sec. 1983." Id. (citing Jones v. Bombeck, 375 F.2d 737, 738 (3d Cir.1967) ("While entrapment may be a proper defense in a criminal action, a police officer's participation in such an activity does not constitute a constitutional violation."); Johnston v. Nat'l Broadcasting Co., Inc., 356 F.Supp. 904, 908-09 (E.D.N.Y.1973) ("In fact we find no decision justifying the conversion of entrapment into an independent federal cause of action cognizable under section 1983 or 1985.")); see also Kondrat v. O'Neill, No. 86-3263, 1987 U.S.App. LEXIS 2293 (6th Cir.1987) (unpublished order) ("Entrapment is not a civil cause of action; entrapment is only a defense to a criminal action.").
 
 
 10
 In sum, plaintiffs have not shown that defendants' actions violated any constitutional right. In any event, there was no "clearly established law" that would have put defendants on notice that plaintiffs had a constitutional right to be free from entrapment in a civil administrative action, or that their conduct was so outrageous as to violate due process principles. Defendants, who were performing a discretionary function of the Board by investigating whether Dr. Giovanetti was practicing dentistry without a license, are thus qualifiedly immune from suit for their actions. While plaintiffs complain that defendants' actions were motivated by a desire to see Dr. Giovanetti's license revoked, the Supreme Court has directed that the availability of the qualified immunity defense is determined solely by reference to the objective reasonableness of an official's conduct. Harlow, 457 U.S. at 818. We do not inquire into the official's subjective motivation for acting. Id. at 816-18.
 
 III.
 
 11
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The court did hold that defendants' decision to file a criminal complaint was protected by absolute immunity and dismissed plaintiffs' claim of a malicious filing. Plaintiffs do not appeal this aspect of the case
 
 
 [2]
 This case is thus distinguishable from our decision in Watts v. Burkhart, 978 F.2d 269 (6th Cir.1992) (en banc), in which we held that members of a state medical licensing board were entitled to absolute immunity for the performance of their quasi-judicial actions of suspending or revoking a physician's license to practice medicine
 
 
 [3]
 The defense of entrapment is distinct from the defense of outrageous government misconduct
 
 
 [4]
 "In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.' " Black v. Parke, 4 F.3d 442, 445 (6th Cir.1993) (quoting Daugherty v. Campbell, 935 F.2d 780, 784 (6th Cir.1991), cert. denied, 112 S.Ct. 939 (1992))