Willie DAVIS, Silvestre Vela, and
Henry Gonzales

v.

Henry NUSS, II, et al.

Civ. A. No. C–77–7.

United States District Court,
S. D. Texas,
Corpus Christi Division.

April 13, 1977.

John Prusia, Nueces County Legal Aid Society, Corpus Christi, Tex., for plaintiffs.

Gerald Benadum, Asst. City Atty., Corpus Christi, Tex., for defendants.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

On January 18, 1977, Plaintiffs filed this action requesting injunctive relief, a declaratory judgment, and damages for the al-

leged deprivation of their due process rights. After a hearing in open court on February 2, 1977, the Court denied Plaintiffs' request for a preliminary injunction and also denied Defendants' motion to dismiss. The case was called for trial before the Court on February 25, 1977. At the conclusion of the trial, the Court announced that its findings and conclusions would be set forth at a later date, and that is the purpose of this memorandum.

### Findings of Fact

1. On January 6, 1977, Plaintiffs Willie C. Davis and Silvestre Vela were "classified," that is, non-probationary employees of the City of Corpus Christi. Plaintiff Henry Gonzales was a probationary employee.

2. On or about December 29, 1976, the Plaintiffs allegedly offered a city resident, Mrs. Paul O'Riley of 542 Scott Drive, to unstop the private sewer line for a fee, using city equipment.

3. On January 3, 1977, Douglas Mathews, Director of Public Utilities for the City, learned of the alleged actions of the Plaintiffs and ordered that an investigation be made of the charges against the Plaintiffs.

4. Jesse Vielma, Field Representative of the Department of Public Utilities, made an investigation and reported to Mathews that, in his opinion, the charges were true. The Court finds that the information obtained by Vielma during his investigation was sufficient to justify his opinion. He acted in good faith. Mathews also was justified in accepting Vielma's account of his investigation. He also acted in good faith.

5. When the Plaintiffs reported to work on January 6, 1977, they were told to report to the office of William Messer, Superintendent of Wastewater Services of the Public Utilities Department. When the Plaintiffs arrived, Messer handed each of them a copy of the department's memorandum concerning a prohibition against offers by employees to open private sewer lines. Messer also read them the suspension procedures as set forth in the Rules and Regulations of the Civil Service Board (Plaintiffs' Exhibit # 1) [hereinafter cited Rules]. During this conference, Messer gave the Plaintiffs an opportunity to state any defense to the charge. The Plaintiffs denied any wrongdoing. Messer then explained that they had the right to have counsel and would have an opportunity to appeal any decision he made, but that they were indefinitely suspended. They were advised that an appeal must be taken within ten days from the date of the suspension.

6. On January 6, 1977, Davis' salary for his work as a repairman was approximately $500 every two weeks. Vela's income as a repairman was $3.35 hourly and he normally worked a 40-hour week, taking home $262.00 biweekly. Gonzales was earning $2.75 an hour, and he normally worked forty hours a week in his job as a crewman.

7. On Friday, January 7, 1977, Mathews had a second meeting with Plaintiffs, at which time Plaintiffs requested and were given the names and addresses of the complaining witnesses against them. Mathews told the Plaintiffs that an investigation of the charges against them was under way, and that a letter from the city legal department would inform them of the final determination of the department. He also told them that their status as employees was at that time undetermined. Mathews also told the Plaintiffs that their salaries would continue until further notice of the department's action. Vielma was also present and during this meeting he was advised that Vela had retained an attorney to represent him.

8. During the course of the investigation but prior to January 13, 1977, Vielma spoke to Vela and Davis regarding the charges. Vielma, convinced that the charges were true, urged Vela to "tell the truth" and hope for lenient treatment.

9. On January 13, 1977, each Plaintiff was sent a letter advising him that because of a violation of the department regulation, which was quoted in the letter, he was immediately suspended without pay for fifteen calendar days and each was demoted.

These letters also advised Vela and Davis of their right to appeal within ten days of receipt. It specifically set forth the date, address and complainants involved in the charges against them. Because of his status, Henry Gonzales had no right of appeal.

10. The Plaintiffs were paid their normal wages for the period January 6–13, 1977, but did not receive any wages from January 13–28, 1977.

11. The Plaintiffs Davis and Vela appealed their demotion and suspension to the Civil Service Board, which upheld the action of the Department. The members of the appeal board were Henry Nuss, Raul Garcia, and Virginia Hartsell, whom were named as Defendants in this lawsuit prior to the date of the appeal.

At the January 19, 1977, hearing before the Civil Service Board, Davis and Vela were present and represented by counsel. Witnesses against them were cross-examined and both had an opportunity to be heard. Prior to the hearing they had received written notice of the charges against them. The burden of proof was on the city department after the charged employee denied the allegations of wrongdoing. Although hearsay testimony may have been presented by both sides in such proceeding, there is no justification to refuse to recognize such hearing. There was no court competent to rule on admissibility of evidence and this situation should not fault the proceedings.

12. Plaintiff Gonzales is now employed by Champlin Petroleum Co., earning $6.64 per hour. He has worked there since approximately February 14, 1977. On the date of the trial, February 25, 1977, Plaintiff Davis had taken a leave of absence from the city to make application for a different job. Plaintiff Vela was employed as a trouble crewman, earning $3.11 hourly. Vela stated that his prior position as repairman was more desirable because it did not involve traveling through the city like the troublecall position does.

13. All of the Plaintiffs stated they had fallen behind on their rent, phone bills and department store bills. Davis also said he had felt that he was treated differently than prior to his suspension. He felt his superiors did not trust him. None of the Plaintiffs was evicted or was any home service such as phone, utilities, etc., discontinued.

*Conclusions of Law*

1. This Court has jurisdiction of this claim brought pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The Defendants herein are not susceptible to a judgment of restitution in their official capacities that would in effect be a mere conduit to the city treasury; however, they may be susceptible to a monetary judgment in their individual capacities only, and then only upon a showing of action with a conscious or reckless disregard of Plaintiffs' rights. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5th Cir. 1976). The Court also has jurisdiction to grant declaratory and injunctive relief against these individuals in their official capacities. *Thurston v. Dekle,* 531 F.2d 1264, 1269 (5th Cir. 1976).

2. At the time of the suspensions, Willie Davis and Silvestre Vela were non-probationary employees. Henry Gonzales was a probationary employee.

3. Plaintiff Gonzales had no property interest in employment that entitled him to the Fourteenth Amendment's due process provisions. The sufficiency of a claimed property right must be decided by reference to state [or local] law or implied understandings between the parties. *Bishop v. Wood,* 426 U.S. 341, 345 and n. 7, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548.

The "Charter for the City of Corpus Christi, Texas" [hereinafter cited "Charter"] (Plaintiffs' Ex. 2) provides in Article VI, Section 5, that a probationary period as set by the Civil Service Board must be served by all individuals in the classified service. The *Rules* set such a probation as a period of six months. *See* Article Three,

Section 5, *Rules.* Gonzales had not completed his probation and was not entitled to the protections of the *Rules,* Article Four, provisions.

4. Plaintiffs Davis and Vela were non-probationary employees at the time of the actions complained of, and as such they had a property right subject to the Fourteenth Amendment's due process clause. The *Rules,* in Article Four, Section Five, set forth numerous "causes for suspension" of a non-probationary employee. Said Article Four creates an expectation of continued employment for non-probationary or "classified" employees. *See Board of Regents v. Roth, supra,* at 578, 92 S.Ct. 2701, and *Thurston v. Dekle, supra.* Furthermore, Article Four, Section 1, provides for a determination of "cause" at a hearing.

■ 5. Minimum pretermination procedural elements required by the due process clause of the Fourteenth Amendment include the following risk reducing procedures: prior to termination, written notice of the reasons for termination must be given and the employee must be given an effective opportunity to rebut those reasons. *Thurston, supra,* at 1273.

■ 6. The Court concludes that the actions of the Defendants on January 6, 1977, did not meet the requirements of due process as to Vela and Davis. Their indefinite suspensions on January 6 were not in conformance with Article Four, Section 1, of the *Rules,* which requires the approval of the City Manager for such action. Furthermore, it appears that although the written notice (in the form of a prior written memorandum regarding a departmental prohibition against offers to unclog private sewer lines) that Defendants gave Plaintiffs may have satisfied the first of the *Thurston* requirements (that of notice), the Defendants did not give Plaintiffs an effective opportunity to rebut those reasons.

7. During the period of January 6–13, 1977, the Plaintiffs were given an opportunity to rebut the charges against them. They spoke with Mr. Mathews on January 7, 1977, and were given the names and addresses of the complaining witnesses. Plaintiffs' suggestion that the city had the duty to arrange an appointment with the City Manager for them is not founded in law. The testimony clearly established that all of the Plaintiffs sought an appointment with Defendant Townsend (the City Manager) but that Townsend was on the phone or otherwise occupied at the time Plaintiffs entered his office. It is apparent that Plaintiffs were aware of an avenue of rebuttal through Townsend. That they chose not to pursue it is not a matter involving denial of procedural due process.

■ 8. The post-suspension evidentiary hearing for Davis and Vela satisfied minimum due process requirements. Where the appealing party has been given the names of the witnesses against him, had an opportunity to cross-examine the witnesses, had counsel, and appeared and testified at the hearing, the requirements of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), *Morrisey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Hornsby v. Allen,* 330 F.2d 55 (5th Cir. 1964), have been satisfied. As the Court in *Morrisey* pointed out, "due process is flexible and calls for such procedural protections as one particular situation demands." *Id.* 408 U.S. at 481, 92 S.Ct. at 2600. This Court is satisfied that "good cause" existed for the actions of the Civil Service Board. The fact that members of the appeal board were named Defendants in this suit did not invalidate the hearing. No showing of partiality was made by Plaintiffs.

■ 9. Plaintiff Henry Gonzales had no claim of entitlement to continued employment with the city. *See Charter,* Art. VI, § 5. Therefore, he had no right to a hearing. *Board of Regents v. Roth,* 408 U.S. 564, fn. 6, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Roane v. Callisburg Indpt. School District,* 511 F.2d 633 (5th Cir. 1975); *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir. 1970).

■ 10. The Civil Service Board's notice and hearing procedures, set forth in

Article Four and Article Five, Section 9, of the Board's Code of Rules and Regulations, are hereby declared unconstitutional. *Thurston v. Dekle,* 531 F.2d 1264, 1274 (5th Cir. 1976), requires that where an employer

"chooses to postpone the opportunity of a non-probationary employee to secure a full-evidentiary hearing until after dismissal, risk reducing procedures must be accorded. *These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons.*" (Emphasis added.)

Specifically, the written rules are constitutionally defective in that Article Four, Sections 1 and 2 do not provide for written notice and an opportunity to rebut charges against tenured employees who are about to be suspended. Section 4 of Article Four requires the Board to establish rules of procedures. The Board has not done so; it is hereby directed to comply with this section. Article Five, Section Nine, concerning demotions, is also deficient in failing to provide written notice, and an opportunity to rebut charges. *See Thurston v. Dekle, supra.* A declaratory judgment shall be entered to the effect that the aforementioned regulations as written are unconstitutional. The Court notes that in Davis and Vela's cases, the written policy in Articles Four and Five were not adhered to, and the requirements of *Thurston* were met in the January 13 notice.

11. The deprivation of due process that occurred on January 6, 1977, was later cured by the January 7 to January 13, 1977, period wherein notice of the charge was given and an opportunity to rebut the charges was granted. The normal remedy for due process employment termination violations is to grant a new hearing and restore any monetary losses that resulted from the suspension. *See e. g. Roane v. Callisburg Independent School District,* 511 F.2d 633 (5th Cir. 1975); *Ferguson v. Thomas,* 430 F.2d 852, 858 (5th Cir. 1970). In the instant case, the January 6 action has been found to have been defective. A new hearing has been held that this Court finds to have been procedurally adequate. The

Plaintiffs received their full wages for the period between the first and second suspensions, and have failed to establish any damages cognizable by this Court. The only remainder of the January 6, 1977, suspension is whatever may remain on the city employment or personnel records. Therefore, the city is hereby directed to expunge any references to the January 6, 1977, suspension from its personnel records.

12. The individual Defendants herein enjoy a "good faith" immunity from suit. *Wood v. Strickland,* 420 U.S. 308, 315, 95 S.Ct. 992, 997, 43 L.Ed.2d 214 (1974); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *Wood* requires that for the public official to enjoy immunity, the Court must determine that the official acted "sincerely and with a belief he [was] doing right." Damages against an official will be awarded

"only if [he] . . . has acted with such impermissible motivation or with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."

*Wood, supra,* 420 U.S. at 322, 95 S.Ct. at 1001. This Court finds no such impermissible motivation or disregard of Plaintiffs' rights. These individuals are, therefore, immune from damages.

13. The Plaintiffs' request for attorney's fees is denied. *See* 42 U.S.C. § 1988 as amended by P.L. 94–559.

14. Any finding of fact that is also a conclusion of law is hereby adopted as a conclusion of law; any conclusion of law that involves a finding of fact is hereby adopted as a finding of fact.

IT IS SO ORDERED.