165 N.J. Super. 220 (1979)
397 A.2d 1136
CENTENNIAL LAND AND DEVELOPMENT COMPANY, PLAINTIFF,
v.
THE TOWNSHIP OF MEDFORD; THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MEDFORD AND EPHRAIM TOMLINSON, 2ND, JUDITH PALOMBI, ELIZABETH WOODFORD, LEE W. BUCKWALTER AND FORDON WARD, INDIVIDUALLY, MEMBERS OF THE TOWNSHIP COMMITTEE; PLANNING BOARD OF THE TOWNSHIP OF MEDFORD AND MARY ELDER, JUDITH PALOMBI, THOMAS SWEENEY, D. GREGORY LAW, ROBERT BENDE, ROBERT STEBBINS, EPHRAIM TOMLINSON, 2ND, RICHARD STRONG AND DONALD BUCHANAN, INDIV., MEMBERS OF THE PLANNING BOARD; ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MEDFORD AND KENNETH ALLEN, SUE LONKEVICH, HENRY CICHON, FRANCIS SHARPLESS, NEWLIN SMITH, DONALD BUCHANAN AND LEE BEALUH, INDIV., MEMBERS OF THE ZONING BOARD OF ADJUSTMENT; REGAN STEIN ASSOCIATES, A N.J. PARTNERSHIP AND THOMAS SCANGERELLA, INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 3, 1979.
*222 Mr. Donald E. Williams, attorney for plaintiff.
Mr. Frederick W. Hardt, attorney for defendant planning Board of Twp. of Medford.
Mr. Thomas Norman, attorney for defendants Tomlinson, Palombi, Woodford, Buckwalter, Ward, Regan Stein Assoc. and Scangarella.
*223 Mr. Robert E. Kingsbury, attorney for defendants Allen, Lonkevich, Cichon, Sharpless, Smith, Buchanan and Bealuh.
WELLS, J.S.C.
This motion for summary judgment is made by the individual defendants, members of the Medford Township Planning Board, Board of Adjustment and Township Committee, respectively, who have been sued in their individual capacities by plaintiff development corporation. The facts, although detailed and complex, may be summarized for purposes of this motion as follows:
In 1970 plaintiff's predecessor in title applied to the Planning Board of Medford Township for subdivision approval for a certain parcel situate within the township's boundaries, which property was acquired by plaintiffs in January 1971. After several hearings at which revised proposals were considered, the planning board adopted a resolution granting approval to plaintiff but conditioning it on acquisition of a variance from the zoning board of adjustment.
Thereafter, plaintiff appeared before the zoning board of adjustment on two separate occasions and the board denied the variance application on the ground that it lacked jurisdiction to so act, in the alternative, that the requisite showing for a variance had not been made. At a subsequent hearing before the township committee it was ruled that the planning board had acted properly in exercising its discretion. No appeal was taken from the board of adjustment's determination.
In August 1978 plaintiff filed suit in this court against the Township of Medford, the township committee, planning board, Board of Adjustment and all the individual members of the respective boards, claiming violations of 42 U.S.C.A. § 1983 and of their rights under the Fifth and Fourteenth Amendments to the United States Constitution, U.S. Const. Amends. V and XIV, and seeking damages, compensatory *224 and punitive, and injunctive relief therefor.[1] The individual members of the respective boards and Township Committee now seek summary judgment dismissing the complaint as to them on the ground that they are absolutely immune from liability under federal law. There existing no genuine issue as to a material fact, the legal issue of whether local zoning officials acting in a quasi-judicial capacity are entitled to an immunity and, if so, whether that immunity be qualified or absolute is ripe for determination. R. 4:46-2. Judson v. Peoples Bank, etc., 17 N.J. 67 (1955).
This court begins its analysis with the proposition:
No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All officers of the government from the highest to the least, are creatures of the law, and are bound to obey it. United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 260, 27 L.Ed. 171 (1882).
Thus, public officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope. Butz v. Economou, ___ U.S. ___, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).
As detailed in T&M Homes, Inc. v. Mansfield Tp., 162 N.J. Super. 497 (Law Div. 1978), the procedure for determining whether a particular public official is entitled to a defense of immunity involves a consideration of public policy and common law tradition. If after examination of these sources, it is determined that an immunity defense exists, it must then be resolved whether the immunity should be absolute or qualified. This decision focuses on the function that particular official serves, his location in our constitutional system and the safeguards surrounding the fulfillment of his duties. Cf. Economou, supra.
*225 Essential to a clear understanding of the issues involved are the roles of officials here sought to be charged with personal liability. Under New Jersey law one of the principal tasks of the planning board is to exercise discretion in evaluating and deciding proposed subdivision or site plan applications. N.J.S.A. 40:55D-37(a). Before the issuance of any permit authorizing such development, a hearing must be held resulting in approval of such action. N.J.S.A. 40:55D-10(a). Among other responsibilities, the board of adjustment must hear and either grant or deny variance applications. N.J.S.A. 40:55D-70(c) & (d). Applicants before these bodies are entitled to a plenary hearing, including notice, examination and cross-examination of witnesses and a determination grounded on competent and credible proofs and represented by appropriate findings thereon. Tomko v. Vissers, 21 N.J. 226, 238-241 (1956). The township committee is assigned the duty of an appellate body in which appeals from the planning board and board of adjustment are taken. N.J.S.A. 40:55D-17(a). In light of their respective responsibilities and the law of New Jersey, these tribunals are clearly not agencies of the local governing body but rather are independent statutory creations performing quasi-judicial, not ministerial, functions. Kotlorich v. Ramsey, 51 N.J. Super. 520 (App. Div. 1958); Kurowski v. Bayonne Board of Adj., 11 N.J. Super. 433 (App. Div. 1951); Robinson v. Cape May Bd. of Adj., 131 N.J. Super. 236 (Law Div. 1974); Yellow Cab Corp. v. Passaic City Council, 124 N.J. Super. 570 (Law Div. 1973).
The immunity of a judge for acts within his jurisdiction has roots extending to the earliest days of common law. See Floyd v. Barker, 12 Coke 23, 77 Eng. Rep. 1305 (1608); Yates v. Lansing, 5 Johns 282 (N.Y. 1810). This exemption was first the subject of judicial scrutiny by the United States Supreme Court in Bradley v. Fisher, 13 Wall. (80 U.S.), 335, 20 L.Ed. 646 (1872), where it was held (at 347) that judges acting "in the exercise of their judicial functions" should be granted immunity in order to maintain "that *226 independence without which no judiciary could either be respectable or useful." Thereafter, in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the court ruled that 42 U.S.C.A. § 1983 was not meant to abrogate the common law immunity theretofore existing, and thus state judges sued thereunder were entitled to the same immunity pronounced in Bradley.
Since Bradley, a progression of cases has documented the expansion of the immunity doctrine. In Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), aff'g mem., 12 F.2d 396 (3 Cir.1926), the court summarily affirmed the Court of Appeal's grant of immunity to federal prosecutors. See also, Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed. 2d 128 (1976). The common law history discussed by the Court of Appeals provided an adequate basis for the further enlargement of the protective shield of immunity to many parties intricately involved in the judicial process, including grand jurors, petit jurors, counsel and witnesses. Yaselli, supra.
The courts have deemed it wise to further broaden the protective umbrella to persons not traditionally considered to be integral members of the judicial scheme. Thus, court-appointed deposition officers, Sarelas v. Sheehan, 353 F.2d 5 (7 Cir.1965), and medical examiners, Mills v. Small, 446 F.2d 249 (9 Cir.1971), cert. den. 404 U.S. 991, 92 S.Ct. 535, 30 L.Ed.2d 543 (1971), have been granted immunity. Likewise, probation officers, Burkes v. Callion, 433 F.2d 318 (9 Cir.1970), cert. den. 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed. 2d 685 (1971); parole officers, Brickner v. Michigan Parole Bd., 405 F. Supp. 1340 (E.D. Mich. 1975); Pennsylvania v. Powers, 311 F. Supp. 1219 (E.D. Pa. 1970), and sheriff officers, People of State of Mississippi ex rel. Giles v. Thomas, 464 F.2d 156 (5 Cir.1972), are entitled to immunity when acting in their quasi-judicial capacities. Even court reporters, Peckham v. Scanlon, 241 F.2d 761 (7 Cir.1957), and court clerks, Scharter v. Smith, 450 F.2d 748 (5 Cir.1971), have been granted immunity. Most recently, *227 Civil Service Board and Public Service Board officials have been found to be entitled to some immunity. Davis v. Nuss, 432 F. Supp. 44 (S.D. Tex. 1977); Condosta v. Vermont Elec. Co-Op Inc., 400 F. Supp. 358 (D. Vt. 1975).
What forces in the law have caused the courts to respond by granting immunity to those participants in the judicial and quasi-judicial process? The policy factors are myriad and weighty on both sides of the argument. Resolution of the issue involves a balancing of the citizen's interest in having a remedy for a wrong suffered and society's interest in attracting qualified persons to public office, T&M Homes, supra, 162 N.J. Super. at 509, who will adjudicate applications on their merits without consideration of matters foreign to the law.
Since the creation of man it has been self-evident that error is an inherent trait of the human personality. Considering the density of population in New Jersey and the volume of land use decisions, Address by Associate Justice Frederick W. Hall, Supreme Court of New Jersey, retired, Arthur T. Vanderbilt Lecture, Harvard Law School Association of New Jersey, April 20, 1977, it is inevitable that in some instances errors will occur. "The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all." Scheuer v. Rhodes, 416 U.S. 232, 241-242, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974). Although certainly not dispositive here, our own Tort Claims Act, N.J.S.A. 59:1-1 et seq., embodies this policy by immunizing public entities, N.J.S.A. 59:2-3(a), and public employees, N.J.S.A. 59:3-2(a), in the exercise of discretion. See Girard v. Alvarez, 144 N.J. Super. 259 (App. Div. 1976).
Further, zoning officials, acting as those here were, are duty-bound to resolve controversial matters often having substantial significance to the community, its residents and the litigants. Their decisions affect the lifeblood of the *228 community: its growth and development. As stated in Bradley v. Fisher, supra:
When controversy involves questions affecting large amounts of property or relates to a matter of general public concern or touches the interests of numerous parties, the disappointment occasioned by an adverse decision often finds vent in imputations of [malice]. [13 Wall at 348]
Should these officials be continually threatened with litigation with every adjudication, the potential effect would be to tilt the scales of justice toward the "safer decision" in a difficult case. At the very least, the specter of a lawsuit skirting in the shadows could play an improper role in the decision-making process. Such a result would not "contribute to principled and fearless decision making but to intimidation." Pierson v. Ray, supra, 386 U.S. at 554, 87 S.Ct. at 1218.
Moreover, many of these local zoning officials serve voluntarily, often at night, without remuneration; yet, they expend extensive time and effort in preparing and participating in the land use development of the community. Were this court to hold that these board members are without any immunity, the inevitable consequence, would be to deter intelligent civic-minded persons from serving on municipal land use boards. The fear of incurring great expense in attorney's fees, losing time from employment and suffering the anxiety and distress resulting therefrom, could have no other effect.
The doctrine of immunity is grounded in two basic mutually dependent rationales:
(1) the injustice, particularly in the absence of bad faith of subjecting to liability an officer, who is required, by the legal obligation of his position to exercise discretion;
(2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good. Scheuer v. Rhodes, supra, 416 U.S. at 240, 94 S.Ct. 1683. Applying these principles to the facts herein, the court is convinced that *229 the individual defendants are entitled to at least a qualified immunity.
The more difficult question in this court's view is whether these zoning officials acting in a quasi-judicial capacity should be granted absolute immunity. In Butz v. Economou, supra, the Supreme Court was confronted with the question of whether a federal hearing examiner or administrative law judge should be absolutely immune from damage suit under 42 U.S.C.A. § 1983. Rejecting the government's argument that all federal officials there sued were immune, the court stated the basic premise to be that executive officials charged with constitutional violations are entitled to a qualified immunity but that there are some officials "whose special functions require a full exemption from liability." Economou, supra 98 S.Ct. at 2912. The court reiterated that judges and other persons intimately tied to the judiciary fall into one of these special categories.
The Court of Appeals had ruled that the hearing examiner was entitled to a qualified immunity on the ground that "officials within the Executive Branch generally have more circumscribed discretion" and that no conflict of interest would result if legal representation were provided by the Executive Branch. The analysis of the Court of Appeals was disapproved: "Judges have absolute immunity not because of their particular location within the government, but because of the special nature of their responsibilities." Economou, supra, 98 S.Ct. 2913. Instead of the scope of discretion which is held by a particular individual, it is the "functional comparability of their judgment to those of a judge," Imbler, supra, 424 U.S. at 423, 96 S.Ct. at 991, and the presence of other judicial characteristics which are decisive in the grant of absolute immunity.
The characteristics of which the court spoke in Economou revolve around the safeguards inherent in the judicial process. These include: the insulation of the judge from political influences, the importance of precedent in resolving controversies, the adversary nature of the process and the correctability *230 of error on appeal. Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decision-making process, there is less pressing need for individual suits to correct constitutional error. Id. Thus, after an extensive review of the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 551 et seq., applicable to the hearing examiner the court concluded: "We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." Economou, supra 98 S.Ct. at 2914.
In light of the statement that federal officials should enjoy no greater protection when they violate constitutional rules than do state officers, Economou, supra 98 S.Ct. at 2908, it would seem that the same analysis utilized in Economou is warranted here, and thus the crucial question for determination is whether the proceedings before the respective boards here share enough of the characteristics of the judicial process to warrant an absolute privilege. As already reviewed, supra, the respective boards and their members operate in a quasi-judicial capacity. More importantly, this court finds many of the same safeguards present here that were held to require absolute immunity in Economou.
Under the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., the members of the planning board and board of adjustment are appointed for terms of from one to four years and may not be removed from office except for cause after a public hearing. N.J.S.A. 40:55D-23 and 69. No member of the board of adjustment may hold elective office or position under the municipality, N.J.S.A. 40:55D-69, and members of both boards are prohibited from participating in any application in which the member has a direct or indirect interest involving any personal or financial interest. N.J.S.A. 40:55D-23 and 69. The members are held to strict rules of accountability, and it has been held that, in addition to the statutory restrictions, board of adjustment members *231 are subject to the code of judicial conduct, Kremer v. Plainfield, 101 N.J. Super. 346 (Law Div. 1968), the rationale being (at 352-353). "The need for unquestioned integrity, objectivity and impartiality is just as great for quasi-judicial personnel as for judges."
In addition to the limitations on the members themselves, there exist numerous procedural safeguards akin to those found in the judicial process applicable to zoning hearings. Both boards are required to hold hearings on development proposals, N.J.S.A. 40:55D-10(a), and minutes of actions taken must be recorded and the reasons stated therefore. N.J.S.A. 40:55D-9(c). These hearings are also subject to the requirements of the Open Public Meetings Act which requires, except in limited situations, that decisions be made in open session of which the public has advance notice. N.J.S.A. 10:4-6 et seq.
Under N.J.S.A. 40:55D-10, a provision strikingly similar to the Federal Administrative Procedure Act, 5 U.S.C.A. § 551 et seq., the presiding officer is authorized to administer oaths and issue subpoenas. See 5 U.S.C.A. § 556(c). Any testimony taken is required to be under oath or affirmation and it must be recorded verbatim by stenographic, mechanical or electrical means. N.J.S.A. 40:55D-10(d). Moreover, all witnesses are subject to the cross-examination of "any interested party." An "interested party" in a civil proceeding is "any person whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under this act, or whose rights to use, acquire or enjoy property under this act, or under any other law of this state or of the United States have been denied, violated or infringed by an action or a failure to act under this act." N.J.S.A. 40:55D-4. This liberal standing requirement encourages adversary proceedings by permitting concerned persons to intervene and, in effect, proceed as a party. Compare 5 U.S.C.A. § 555(b).
*232 After determination of an application the board must reduce its decision to writing and include findings of fact and conclusions of law. N.J.S.A. 40:55D-10(g). A copy must then be mailed within ten days of the decision to the applicant or to his attorney, N.J.S.A. 40:55D-10(h), and publication in an official newspaper is required, N.J.S.A. 40:55D-10(i).
Erroneous decisions may be corrected on appeal. The right of appeal to the governing body exists if taken within ten days of the publication of a final decision of the board of adjustment approving an application for development, or if provided by local ordinance, of other final decisions of the planning board or board of adjustment. N.J.S.A. 40:55D-17(a). On appeal the governing body is restricted to a review of the record below, N.J.S.A. 40:55D-17(c), and oral and written argument thereon. N.J.S.A. 40:55D-17(b). Moreover, an adverse determination may be challenged in the Superior Court of New Jersey, R. 4:69-6(b)(3), and nothing in the Municipal Land Use Law may be construed to affect that right, N.J.S.A. 40:55D-17(h).
After having considered the similarities between judicial and municipal zoning proceedings, this court is convinced that the risk of an unconstitutional act is clearly outweighed by the importance of having these men and women exercise independent judgment and that the safeguards here present warrant an absolute privilege. Thus, members of local zoning boards and governing bodies when acting in a quasi-judicial capacity within their statutory jurisdiction are entitled to absolute immunity.
In reaching this result this court has scrutinized Mr. Justice White's opinion in Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) where it was held that public school board members were qualifiedly immune from damage suits under § 1983 for their actions in expelling school students. The court described the functions of these officials as involving the exercise of discretion, the weighing of many factors and the formulation of long-term *233 policy. Wood, 420 U.S. at 319, 95 S.Ct. 992. Although seemingly exercising quasi-judicial functions at the expulsion hearing, the court refused to extend absolute immunity:
* * * [A]bsolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations. [at 320, 95 S.Ct. at 1000]
It is this court's view that the protective scope of absolute immunity would increase the zoning members' abilities to exercise their discretion in an intelligent and impartial fashion without consideration of sources foreign to the law. More importantly, the procedural background and safeguards surrounding school board members' activities are surely distinguishable from those applicable in zoning proceedings. In Wood no mention was made of any rule, regulation or statute governing the conduct of the hearing. Certainly, nothing comparable to our own Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., or the Administrative Procedure Act, 5 U.S.C.A. § 551, was applicable in the Wood proceedings. Consequently, the officials there were free to create and enforce their own regulations without compliance with any precautionary safeguards. In essence, the school board proceedings lacked any resemblance to judicial action.
While it is true that some cases have applied Wood v. Strickland to persons who appear to have been acting in a quasi-judicial function, this court feels that the shafts of light of Economou dictate a different result. Compare Schoone v. Olsen, 427 F. Supp. 724 (D. Neb. 1976) (planning commission and redevelopment officials held to be qualifiedly immune for authorizing redevelopment plan); Barbaccia v. Santa Clara Cty., 451 F. Supp. 260 (N.D. Cal. 1978) (qualified immunity extended to city council members making discretionary determinations with respect to a single parcel of land); Adler v. Lynch, 415 F. Supp. 705 (D. Neb. 1976) (planning commissioners granted qualified immunity for *234 denial of variance);[2]David v. Nuss, 432 F. Supp. 44 (S.D. Tex. 1977) (Civil Service Board members granted qualified immunity) with Condosta v. Vermont Elec. Co-Op, Inc., 400 F. Supp. 358 (D Ut. 1975 (individual members of the Public Service Board which exercised judicial power protected under doctrine of quasi-judicial immunity).
The cases cited above, all decided before Economou, evidence a trend towards a special analysis developed for so-called administrative officials. See Kinderhill Farm Breeding Associates v. Appel, 450 F. Supp. 134 (S.D.N.Y. 1978). The rationale resulted in only a qualified immunity for these officials relying extensively on Wood v. Strickland. In this court's view, Economou's appearance on the judicial scene marks an end to this trend. Economou adds a new dimension to the Wood v. Strickland analysis by focusing on the presence of safeguards analogous to those in the judicial system. It is this factor which dictates a different result in this case.
This court is of the view that the qualified immunity formula established in Wood v. Strickland would not sufficiently guard the policy sought to be protected here. That the potential for personal liability would play a role in both the decision-making process and a person's decision to serve cannot be doubted. Nor can it be said that the grant of absolute immunity deprives the wronged party from a remedy: If a decision is merely wrong, it can be corrected on appeal to the governing body or by the courts; if it is infected by corruption, the individuals even though cloaked with an absolute immunity, for damage suits may be prosecuted for a willful deprivation of constitutional rights under 18 U.S.C.A. § 242, the criminal analogue of § 1983. Finally, this court disagrees that the summary judgment procedures are an adequate shield from patently frivolous suits. *235 Certainly, it would be little comfort to the zoning official who is repeatedly forced to retain counsel after every zoning determination. Moreover, it has been recognized that summary judgment is inappropriate when the central and perhaps only inquiry is the official's state of mind. Wright, Law of Federal Courts, 493 (1976). Consequently, for these reasons, the court deems the better course to be to grant the absolute immunity sought. Summary judgment for the individual defendants is hereby granted.
NOTES
[1] The § 1983 action is combined with an in lieu of prerogative writs suit under R. 4:69-1 alleging arbitrary and capricious action on the part of the respective boards.
[2] We read Adler as involving quasi-judicial activity on the part of the municipal agencies rather than legislative. See T. & M. Homes, Inc. v. Mansfield Tp., supra.