837 A.2d 427 (2000)
364 N.J. Super. 546
P.T., A.T. and H.T., Plaintiffs-Appellants,
v.
RICHARD HALL COMMUNITY MENTAL HEALTH CARE CENTER; Amy Kavanaugh; Madelyn Smith Milchman; Madelyn Smith Milchman Firm; Margaret C. Blackburn; and Resource Center for Women and their Families of Somerset County, Defendants-Respondents, and
Amy Kavanaugh, Third Party Plaintiff-Respondent,
v.
M.T., now known as M.S., Third Party Defendant-Respondent.
Superior Court of New Jersey, Law Division, Somerset County.
Decided May 2, 2000.
*428 Robert B. Gidding, Merion Station, PA, for Plaintiffs.
John G. Tinker, Jr., Leary, Bride, Tinker & Moran, Cedar Knolls, for Defendant-Third Party Plaintiff Kavanaugh.
Steven A. Weiner, Picillo Caruso, West Orange, for Defendant-Third-Party Plaintiff Milchman.
Scott D. Rodgers, Miller Robertson & Rodgers, Somerville, for Defendant Richard Hall Community Mental Health Center.
Christopher P. Gengaro, Lentz & Gengaro, West Orange, for Third-Party Defendant M.S.
HELEN E. HOENS, J.S.C.
Before the court are the motion of defendant Madelyn Milchman for summary judgment and the cross-motion of plaintiffs for an order compelling her deposition. The facts on which this motion and cross-motion are based are not in dispute. This matter originally arose out of an action for divorce between the parties, P.T. and M.S., husband and wife, respectively. During the pendency of that divorce proceeding, M.S. alleged that P.T. had sexually abused the couple's minor daughter and further alleged that the abuse occurred with the knowledge, encouragement and participation of P.T.'s parents, A.T. and H.T. By Order dated May 24, 1993, the Honorable Graham T. Ross appointed Madelyn Milchman, Ph.D. "to conduct an evaluation and render a report to the Court with recommendations as to [P.T.'s] further contact and visitation with his daughter." *429 Milchman thereafter conducted her evaluation and prepared and filed with the court her formal report and recommendations. While it appeared thereafter that the parties to the divorce action had resolved their dispute concerning custody and visitation of the minor child, more recently, that apparent resolution has been reversed by the Appellate Division, P.T. v. M.S., 325 N.J.Super. 193, 738 A.2d 385 (App.Div.1999), and the issues concerning the custody of and visitation with the child are proceeding again in the Family Part.
The complaint in this Civil Division matter was filed in July of 1996, at a time when the issues in the Family Part were still on-going. This matter was stayed and this motion in particular was stayed during the extensive proceedings in the Family Part and during the appeal which resulted in the remand for further proceedings in the Family Part.
The complaint in this matter was brought by P.T., the father of the minor child, and by his parents, A.T. and H.T., the grandparents of the minor child. While the complaint includes a number of defendants and raises a variety of theories against them, as it respects Milchman, the complaint sounds in professional malpractice. More specifically, the complaint contends that Milchman excessively delayed her evaluation, failed to consider and apply research concerning suggestibility of children, improperly permitted her personal feelings of dislike for P.T., A.T. and H.T. to influence her evaluation, failed to consider other alternative explanations for the child's allegations, "fraudulently and negligently" held herself out as an expert in the field of child sexual abuse and failed to follow certain ethical principles governing psychologists. In addition, the complaint raises allegations against Milchman in the nature of a violation of plaintiffs' constitutional rights, failure to act in good faith, intentional wrongdoing motivated by personal animus toward plaintiffs, conspiracy to interfere with the relationship between plaintiffs and the minor child, and recklessness. Based on these allegations, plaintiffs seek compensatory and punitive damages from Milchman.
Milchman moved for summary judgment on all counts of the complaint against her. She contends that because she acted at all times pursuant to an appointment by a court order, all of her actions in this matter are cloaked in absolute immunity. She bases her arguments on the decision of the United States Supreme Court in Briscoe v. LaHue, 460 U.S. 325, 356-57, 103 S.Ct. 1108, 1127, 75 L.Ed.2d 96, 121 (1983), and of our New Jersey courts in Delbridge v. Office of Public Defender, 238 N.J.Super. 288, 301-02, 569 A.2d 854, 860-61 (Law Div.1989), aff'd o.b. sub nom., A.D. v. Franco, 297 N.J.Super. 1, 687 A.2d 748 (App.Div.1993), certif. denied, 135 N.J. 467, 640 A.2d 849 (1994). Milchman contends that while there are no New Jersey decisions precisely on point, the performance of a court-appointed expert psychologist must be cloaked in absolute judicial immunity. She cites numerous published decisions from other jurisdictions which have directly addressed the issue now before this court and which have held that a court-appointed psychologist, in particular one involved in cases of alleged child sexual abuse, falls within the scope of judicial immunity and she urges this court to so hold.
Plaintiffs oppose the motion and cross-move for an order compelling Milchman to submit to a deposition in connection with their claims against her and the other defendants. Plaintiffs contend that the motion is premature in light of the fact that Milchman has refused to date to submit to a deposition. They argue that as a result the facts concerning the actual extent *430 of her evaluation and the work which she performed is largely unknown. Plaintiffs, therefore, urge the court to deny the motion as premature until such time as discovery is completed. In the alternative, plaintiffs contend that the decision of the court in Delbridge does not support the arguments made by defendant Milchman, asserting that the court there found that court-appointed counsel could indeed be sued for malpractice and could be pursued on other theories similar to the ones they seek to raise here. Moreover, citing the decision of the New Jersey Supreme Court in Levine v. Wiss & Co., 97 N.J. 242, 478 A.2d 397 (1984), plaintiffs argue that Milchman was not performing a function which would entitle her to immunity and that, therefore, she should not be protected from the allegations raised against her. Finally, plaintiffs urge that their cross-motion to compel Milchman to submit to a deposition be granted.
First, respecting the plaintiffs' contention that the motion is premature, it is clear that the motion is ripe for adjudication at this time. The theory of the summary judgment motion is that Milchman enjoys absolute immunity, a theory which is based upon her status as a court-appointed expert and therefore, in essence, is one which can be decided without regard for the precise facts of what she did or did not do in that capacity. The theory of absolute immunity can be addressed without regard to the specifics of her engagement for it rests on the theory, urged upon the court by her counsel, that her appointment carried with it the protection ordinarily conferred on judges and others acting in a quasi-judicial capacity. Regardless of whether or not the court accepts this argument, the motion itself is based solely on two uncontested facts, namely, that she was appointed by court order to conduct an evaluation and render a report and recommendations and that she in fact thereafter did so pursuant to that order. Thus, the motion is not premature and plaintiffs' argument in this regard is unpersuasive.
Turning to the heart of the dispute, the issue before the court is one which has not been squarely addressed in any published opinion in this state and presents this court with a question of first impression. Because it is a novel question, we address it in some detail. Few reported decisions in New Jersey even touch upon the issue of judicial or quasi-judicial immunity. In Levine v. Wiss & Co., 97 N.J. 242, 478 A.2d 397 (1984), the New Jersey Supreme Court addressed the issue of whether an accountant selected by the parties in a matrimonial proceeding for the purpose of determining the valuation of certain business assets could thereafter be sued by one of the parties for accounting malpractice in connection with the opinion he rendered and by which the parties agreed in advance to be bound. In that decision, the Court held that while arbitrators are generally accorded immunity, their immunity is based upon the function that they perform, namely, a quasi-judicial decision-making function. In part, therefore, their immunity is based upon the great deference shown by our courts and by the United States Supreme Court to arbitration and the people who undertake to perform that task of dispute resolution. Pointing out that the accountant in Levine simply performed an accounting function, our Supreme Court held that his work was not shielded by immunity but was required to be performed in accordance with the usual dictates of his profession, thus exposing him to a suit for professional negligence in the event that he failed to do so. Id. at 251, 478 A.2d at 401-02.
In so holding, the Court cautioned that the immunity afforded to arbitrators is *431 designed to protect their integrity and their independence and to permit them to function without fear of adverse consequences. Id. at 250, 478 A.2d at 401. The Court held that any grant of immunity should not be extended "further than is needed to advance these purposes and underlying policies." Id. at 251, 478 A.2d at 401. Moreover, the Court commented that the fact that the accountant was court-appointed was of no consequence, because in doing so the trial court simply entered a consent order agreed upon by the parties that they would be bound by the valuation of the accountant, an act which did not alter the fact that the accountant there neither adjudicated a dispute nor acted in a quasi-judicial capacity. Id. at 252, 478 A.2d at 402. Based on this rationale, which the dissenting justice contended was an unnecessarily restrictive view of an arbitrator's function, see id. at 256-57, 478 A.2d at 404-05 (O'Hern, Justice, dissenting), the Court rejected the argument that the accountant was immune from that plaintiff's suit for professional malpractice.
More recently, the Law Division, in an opinion subsequently affirmed by the Appellate Division, addressed the question of whether court-appointed law guardians and Public Defenders are entitled to immunity. In Delbridge v. Office of Public Defender, supra, plaintiffs were the parents of children who had been removed from their home in DYFS abuse and neglect proceedings. As a part of those proceedings, the trial court appointed a law guardian to represent the interests of the children in the proceedings and appointed counsel for the adults. In subsequent proceedings, the adults sought to sue those individuals and others on a variety of legal theories arising out of the proceedings. As to the attorneys who had been appointed to serve as law guardians, the court held that the doctrine of absolute immunity protected them from any suits on any theories. 238 N.J.Super. at 299-300, 569 A.2d at 859-60. The judge in Delbridge relied on variety of decisions holding that judicial officers are absolutely immune and discussed at length the public policy rationale for judicial immunity. Moreover, citing Cashen v. Spann, 66 N.J. 541, 334 A.2d 8, cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975), the court pointed out that "court officers exercising judicial functions are absolutely immune," Delbridge v. Office of Public Defender, supra, 238 N.J.Super. at 300, 569 A.2d at 860, and commented that even in the face of a claim of malice or an allegation of corruption, such immunity is absolute. Ibid. Reasoning that the law guardians functioned as officers of the court and were an integral part of the judicial process, the court held that they were immune from suit. As the court there noted, "[t]hose integrally related to the judicial process should not be subject to `private prosecutions whenever... disappointed suitors might dictate'.... To do so would interfere with `their independence and destroy their authority.' " Id. at 301, 569 A.2d at 861 (quoting Little v. Moore, 4 N.J.L. 84, 86 (Sup.Ct.1818)).
Turning to similar claims by the Delbridge plaintiffs against the attorneys from the public defender's office who had been appointed to represent their interests as parents in the proceedings, however, the court reached a different result. The judge determined that the court-appointed attorneys for the parents were only entitled to a limited grant of immunity, holding that they could be sued by the parents whose interests they had represented for legal malpractice, conspiracy, or other intentional misconduct. Delbridge v. Office of Public Defender, supra, 238 N.J.Super. at 307, 569 A.2d at 863. Relying on federal law and federal precedents, the court held that in general court-appointed counsel *432 enjoy immunity, but that the immunity afforded to them carried with it some exceptions. The court relied upon Tower v. Glover, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984), in which the United States Supreme Court held that a public defender was afforded no immunity in an action brought pursuant to 42 U.S.C. § 1983 alleging intentional misconduct or conspiracy. Moreover, the Supreme Court in Tower held that the public defender appointed to represent the interests of the adult enjoys only a qualified immunity which does not protect him or her from a claim of professional malpractice. The Delbridge court, therefore, reasoned that while an attorney who serves as the prosecutor can be said to be serving the interests of society as a whole, the counterpart attorney acting as a public defender serves a more limited function similar to that of a privately retained attorney, acting only on behalf of the client whose interests he or she has been appointed to represent. Delbridge v. Office of Public Defender, supra, 238 N.J.Super. at 311, 569 A.2d at 865. This distinction led the judge in Delbridge to conclude that the public defender who was appointed to represent the adult in the abuse and neglect proceeding could not be absolutely immune and could only be found to have a limited immunity, thus exposing that attorney to suits for professional negligence. Based on this rationale, the court held that the attorney appointed to serve as the representative of the adult in the proceeding was not immune from suits for malpractice notwithstanding his or her court appointment. Id. at 311-12, 569 A.2d at 865-66.
Plaintiffs in this matter contend that the decision in Delbridge mandates that this court reject Milchman's contention that she is entitled to immunity, likening her to the appointed counsel who there was found to be outside the bounds of immunity. Plaintiffs do so, however, by comparing her role as a court-appointed psychologist with that of a law guardian appointed in DYFS proceedings in the Family Part and arguing that the roles are so similar that the same analysis should apply to both. In so arguing, however, plaintiffs in fact prove too much, for the court in Delbridge drew a distinction between the attorneys from the office of the public defender appointed to serve as law guardians, who were afforded absolute immunity, and the attorneys from the same office who were appointed to represent the interests of the adults who were defending themselves in the proceedings, who were not granted immunity from suits for intentional misconduct or malpractice.
The distinction in Delbridge is significant, for the court there analyzed the role served by the attorneys in the two separate appointments functionally, as plaintiffs here urge this court to do. The judge in Delbridge reasoned that in the former role, that of law guardian, the attorney was appointed to serve a function broader than the interests of the parties, and was charged with advocating to the court for the best interest of the children who were the focus of the inquiry. That broader role, and its wider social importance to our system of justice, mandated that the immunity be afforded. Id. at 300-01, 569 A.2d at 860-61. Indeed, it was the distinction between that role and the more ordinary appointed counsel role, in which the attorney advocates only for the private interest of the person he or she is assigned to represent, which motivated the judge to deny the immunity in the latter category but to grant it in the former. As the judge in Delbridge held, "[o]nce the appointment of a public defender in a given case is made, his public or state function ceases, and thereafter, he functions purely as a private attorney concerned with servicing his client; thus, he ought to be *433 subject to liability for tortious conduct." Id. at 312, 569 A.2d at 866. In Delbridge, while the public defenders who represented the parents enjoyed qualified judicial immunity, they were not immune from claims of conspiracy, intentional misconduct and legal malpractice. Id.
Plaintiffs here base their argument only on that part of the Delbridge analysis in which the court addressed appointed counsel, overlooking its separate rationale relating to law guardians. As such, they argue that Milchman, a court-appointed psychologist, is more like the public defender representing the parents than she is like the law guardian, as a result of which she should be granted the same level of qualified immunity there granted to counsel, exposing her to virtually all of the allegations against her in this complaint. This court does not agree.
Utilizing a functional analysis, the role that Milchman played and was expected to play in this matter was virtually identical to that of the law guardian in Delbridge. She was charged with conducting an evaluation, with preparing a report of her findings and with making a recommendation to the court for its consideration and review. She did so. In that context, she was not charged with privately representing a party, in the sense that a public defender assigned to represent a litigant is charged with representation as his or her principal role. Nor is there any evidence or any suggestion that she did perform such a role. On the contrary, the evidence is that her role, like that of the law guardian, was one which called upon her to look beyond the concerns of the adult parties and to look to the best interests of the child. Id. at 301, 569 A.2d at 860-61. Her role was to assist the Family Part with her evaluation and her recommendations, without regard to the interests of the adults, much like the function performed by the law guardian. That being the case, under the Delbridge analysis, Milchman enjoys absolute immunity from litigation in connection with her duties and her role in this underlying litigation.
A similar analysis formed the basis for the law division's decision to extend immunity to local zoning board members in Centennial Land & Dev. Co. v. Township of Medford, 165 N.J.Super. 220, 397 A.2d 1136 (Law Div.1979). That court based its decision in part upon a functional analysis, but in part upon a consideration of public policy concerns. As the Court there noted, the extension of the grant of immunity must be based on two "mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith of subjecting to liability an officer, who is required, by the legal obligation of his position to exercise discretion, [and] (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good." Id. at 228, 397 A.2d at 1140.
While one could draw a distinction between the public good that zoning officers are charged with protecting and the public good to be protected by a court-appointed psychologist, such a distinction would, in the end, overlook the fundamentally important role that the psychologist in this setting plays for the court. Indeed, the same public policy concerns that the court identified in Centennial as grounds which govern the immunity decision apply with equal force here. Once appointed by the court, Milchman was required to exercise her judgment and discretion in conducting her evaluation and making her recommendations to the Family Part judge. Once appointed, it was necessary that she be free to do so decisively and with complete candor. As with the zoning board official, whose decisions might be unpopular with *434 some, the risk that her analysis and recommendation might be unpopular with one of the parties was overwhelming. And the requirement that she be shielded from the parties' reaction to that unpopular result is no less important and, under the circumstances, more important, than the concerns faced by the Centennial court. This public policy analysis, then, likewise, supports the conclusion that immunity should be extended to the court-appointed psychologist Milchman.
This result, as well, is consistent with the overwhelming majority of the decisions around the country in which the precise question which is before this court has been addressed and analyzed. Particularly instructive in this regard is the reasoning of the appellate court in Texas in Delcourt v. Silverman, 919 S.W.2d 777 (Tex.Ct.App.1996). There, in a matter factually similar to this one, the court applied the functional approach to the grant of immunity described by the United States Supreme Court in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and in Briscoe v. LaHue, supra, and determined that the activities of the court-appointed psychologist were intimately associated with the judicial process such that the psychologist was integral to that process and entitled to immunity. Delcourt v. Silverman, supra, 919 S.W.2d at 782-83. The Texas Court of Appeals in Delcourt separately addressed the status of the guardian who had been appointed to represent the interests of the child in that proceeding, functioning much like the law guardian in Delbridge. The Texas court, after analyzing numerous decisions of other jurisdictions, noted that "[t]he considerations favoring immunity in the child custody or abuse setting are numerous and compelling." Id. at 785. The court expressed the need to ensure that the appointed officer be able to remain impartial "unaltered by the intimidating wrath and litigious penchant of disgruntled parents," ibid. (quoting Short v. Short, 730 F.Supp. 1037, 1039 (D.Colo.1990)), voicing its concern that threats of liability in that setting might impede the guardian's ability to determine and report on the best interests of the child. Ibid. Next, the Texas court noted a concern that qualified attorneys might be reluctant to serve if they were not granted immunity, a matter of broader public policy concern than the interests of the parties to the proceeding. Ibid. Moreover, the court there specifically rejected plaintiff's claim of conspiracy, holding that such a claim could not overcome the immunity protection. Id. at 787.
Similarly, the Massachusetts Supreme Court in LaLonde v. Eissner, 405 Mass. 207, 539 N.E.2d 538 (1989), reached the same conclusion. That court, faced with a claim by a mother and her child against a court-appointed psychiatrist for an allegedly negligent evaluation of the child, held that the psychiatrist was performing an essential function for the court and was entitled to absolute immunity as a result. Id. at 541. That court held, further, that the fact that the particular psychiatrist was not selected by the court, but was named by the probation department, was irrelevant based on the functional analysis, id. at 541-42, and the fact that the father of the child had been ordered to pay the court-appointed expert's fees was insufficient to alter the functional analysis pursuant to which the expert was immune from litigation arising out of the performance of the task. Id. at 542 n. 9. The courts in other jurisdictions have reached similar results. E.g., Lythgoe v. Guinn, 884 P.2d 1085, 1093 (Alaska 1994) (granting absolute quasi-judicial immunity to court-appointed psychologist serving as custody investigator; citing public policy considerations); Lavit v. Superior Court of Arizona, 173 Ariz. 96, 839 P.2d 1141, *435 1146 (Ct.App.Div.1 1992) (distinguishing court-appointed psychologist in child custody disputes whose recommendations assist the court and who is immune from privately retained expert whose role is that of an advocate for a party and who is not immune); Howard v. Drapkin, 222 Cal.App.3d 843, 860, 271 Cal.Rptr. 893, 903 (1990)(extending immunity to psychologist privately retained by parties as a mediator in child custody dispute); S.T.J. v. P.M., 556 So.2d 244 (La.Ct.App.1990) (granting immunity to court-appointed psychologists in child sexual abuse and custody dispute based on performance of quasi-judicial function).
Significantly, the courts which have addressed the issue directly have held, and this court agrees, that there are broader societal interests to be protected by the grant of immunity such that to deny the protection to this court-appointed expert would be to exert a chilling effect on the court itself in the performance of its functions. The role played by the psychologist in this setting is one which that individual must be free to perform without fear of reprisal by parties to the proceedings who are, in the end, disappointed with the result or with the recommendations provided to the court. Moreover, it is essential to the proper functioning of the proceeding in which such an expert is appointed that the court be able to rely on the findings and the recommendations, a result which will not be served if the experts are unwilling to serve at all or are reluctant to perform their assigned task with complete candor. These concerns transcend the particular litigation and the interests of the specific parties, for the role assigned to the expert in this context is integral to the judicial process. Public policy, therefore, requires that persons who are appointed to serve in this role "be free to act independently and vigorously without fear of reprisal at the hands of aggrieved parents." Delbridge v. Office of Public Defender, supra, 238 N.J.Super. at 302, 569 A.2d at 861.
Nor is this conclusion in any way inconsistent with the decision of the New Jersey Supreme Court in Levine, or with the Appellate Division's decision in Wolpert v. North Shore Univ. Hosp., 231 N.J.Super. 378, 555 A.2d 729 (App.Div.1989). In Levine, while acknowledging the favored status of an arbitrator, the Supreme Court permitted the parties to pursue litigation for professional malpractice as against the professional whom they had selected to perform their asset valuation. The Court reasoned that in that matter the expert sought to be sued was merely that, an expert privately retained and agreed upon by the parties. Levine v. Wiss & Co., supra, 97 N.J. at 251, 478 A.2d at 401-02. And in spite of the fact that the trial court there had issued an order giving binding effect to that expert's valuation as between the parties, the expert there performed a limited and discrete function, lacking in the exercise of discretion or judgment. It is, however, this factor which distinguishes the role played by the law guardian in Delbridge, and the role played by Milchman in the proceedings in the Family Part which give rise to this application, from the role of the accountant in Levine. The interest Milchman was charged with evaluating and protecting was broader than that of the parties, for it impacts upon the wider societal interests protected in the Family Part. In that regard, as with other court-appointed officers who are charged with such roles, Milchman is entitled to immunity from suit arising out of her performance of that function.
In Wolpert, the Appellate Division did not address the immunity issue at all, basing its decision only on the jurisdictional dispute raised by the parties. While referring in a footnote to the Levine decision and its refusal to grant immunity to an *436 arbitrator, the Appellate Division noted that while "a similar principle may apply" to psychologists the issue had not been briefed. Wolpert v. North Shore Univ. Hosp., supra, 231 N.J.Super. at 381 & n. 1, 555 A.2d at 730 & n. 1. Thus, the Appellate Division in Wolpert did not have the benefit of briefing of the issue and did not engage in either a functional or a public policy based analysis of the immunity question raised by the parties here.
Therefore, whether we utilize the strict functional analysis approach or the broader public policy approach, the result is the same. Milchman, in her role as a court-appointed expert psychologist charged with evaluating the putative victim of child sexual abuse and charged with making recommendations to the Family Part judge, performed a role which was integral to the decision-making function of the court. As a result, based upon the analysis of the function she was charged with performing, she is entitled to the immunity which is afforded to the decision-making function itself. Alternatively, strong public policy reasons mandate that she be able to perform that role with candor and without fear of reprisal, lest her judgment be clouded or her willingness to serve be diminished. As a result, on this alternative ground as well, she is entitled to the protection of immunity.
For the foregoing reasons, the motion of Madelyn Milchman, Ph.D. for summary judgment is granted and the cross-motion to compel her deposition is denied.