**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0043-24

JAMES MATHEWSON,

    Plaintiff-Appellant,

v.

CHARLES J. MOST, PSY.D.,

    Defendant-Respondent.

_____

Submitted October 30, 2025 – Decided January 16, 2026

Before Judges Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1176-23.

Resnick Law Firm, LLC, attorneys for appellant (Steven M. Resnick and Catherine A. Manino, on the briefs).

Farkas & Donohue, LLC, attorneys for respondent (Beth A. Hardy, of counsel and on the brief).

PER CURIAM

Plaintiff James Mathewson appeals from the July 25, 2024 Law Division order granting summary judgment to defendant Charles J. Most, Psy.D., and dismissing plaintiff's complaint with prejudice. We affirm.

I.

During the pendency of their divorce, plaintiff and his now former spouse, Jessica Mathewson (collectively, the divorcing parties), were engaged in a custody dispute in which Jessica[1] requested the Family Part judge interview their two children. The judge denied the application based on the children's young age and other issues not relevant here but expressed concerns about deciding custody and parenting time without the benefit of a qualified expert's opinion on the children's best interests. On November 9, 2020, the judge ordered:

> In lieu of child interviews, the [divorcing] parties shall retain a joint custody and parenting time expert to opine on the best interest[s] of the children and provide said report within [forty-five] to [sixty] days of this order. The [divorcing] parties shall share the cost of this evaluation and report [fifty-fifty].

The accompanying statement of reasons reiterated:

> The motion record makes clear that [the divorcing] parties have completely different views of their relationship and the needs of their children. It is for

---

[1] Because plaintiff and his ex-wife Jessica Mathewson share a common surname, this memo refers to her as Jessica. No disrespect is intended.

A-0043-24

this reason that the court is persuaded that an expert report is necessary to assist the court in determining the best interest[s] of the children. Accordingly, the court orders the [divorcing] parties to retain a joint expert and to equally divide all costs.

Ultimately, the divorcing parties consented to retaining defendant to "prepare a preliminary assessment addressing primarily the mental health and best interest[s] of the minor children relative to the issue of parenting time." They executed a retainer agreement stating defendant would "conduct interviews, psychological testing, review of documents, home/office visits as needed, collateral interviews as needed and any other services that are required to form an opinion" and would follow the standards set forth by the American Psychological Association and the New Jersey Psychological Association. The agreement also confirmed defendant had no prior contact with the divorcing parties and noted an understanding "that the [divorcing] parties may or may not agree in part or in total with [defendant]'s opinions."

Pursuant to the agreement, defendant produced his report on February 15, 2021. We need not recite in detail defendant's findings and recommendations, as they are not relevant to our resolution of this appeal. Suffice it to say, the report detailed an unflattering picture of plaintiff's relationship with the children. It recommended Jessica be designated as the parent of primary

A-0043-24

residence but urged the divorcing parties to "work toward a [fifty-fifty] coparenting agreement."  The report also defined several steps plaintiff should take to reconcile his relationship with the children and achieve equal parenting time.

Although defendant was not deposed, the divorcing parties relied on his report in resolving their custody and parenting time dispute.  Plaintiff asked defendant for a copy of his file underpinning the report but did not receive it until after the divorce was finalized.

On June 19, 2023, plaintiff filed a complaint alleging defendant

> misreported data, misrepresented key facts from his data-gathering process, failed to report data, failed to review [Jessica]'s medical and psychological records, misanaly[z]ed certain parties' mental health and/or suppressed relevant information pertaining to same, and failed to either recognize or acknowledge that the children were being unduly influenced against . . . [p]laintiff.

Plaintiff claimed he discovered defendant "relies on expert work from [Jessica]'s attorneys for a significant portion of his income," and alleged defendant's

> knowing and willful preparation of the defective report, and his subsequent refusal to produce the file underpinning it, indicate that he placed greater weight on protecting and maintaining his lucrative financial

A-0043-24

> relationship with [Jessica]'s attorneys than producing an accurate and reliable best interest[s r]eport.

Count one, alleging malpractice, claimed defendant owed a duty to plaintiff to prepare an accurate and reliable report but negligently produced a defective report on which plaintiff relied. Count two, alleging fraud, claimed defendant held himself out to be a neutral party and knowingly failed to advise plaintiff "that a substantial portion of his practice was and is derived from his professional relationship with [Jessica]'s attorneys." Both counts contended defendant's actions harmed plaintiff's relationship with his children.

Defendant moved for summary judgment based on judicial immunity and litigation privilege. Plaintiff opposed the motion, contending defendant was not a court-appointed expert but instead a joint expert retained by the divorcing parties, and therefore was not entitled to judicial immunity. Although not pled in the complaint, plaintiff also alleged defendant exceeded the scope of his retainer by treating the children, which was not shielded by any privilege or immunity.

After considering argument, the motion judge issued a July 25, 2024 order accompanied by a comprehensive written opinion. As a threshold matter, the judge determined as a matter of law defendant was a court-appointed expert. Citing the motion practice that resulted in defendant's retention, along with the

5

court's oral and written reasons for entering the November 9, 2020 order, the motion judge concluded defendant was a "court-appointed psychological expert whose function and role was to serve the court and assist it in assessing the children's best interests. [Defendant] performed that function, notwithstanding that [Jessica]'s attorney selected him, [plaintiff] consented to the selection, and [the divorcing] parties . . . agreed to pay [defendant]'s fee."

Because defendant was a court-appointed expert, the motion judge found he was entitled to judicial immunity from the malpractice claims pursuant to P.T. v. Richard Hall Community Mental Health Care Center (P.T. I), 364 N.J. Super. 546 (Law Div. 2000), aff'd o.b., 364 N.J. Super. 460 (App. Div. 2003). The judge also dismissed plaintiff's fraud claim because: (1) it alleged equitable fraud but sought legal damages; (2) defendant had no duty to disclose details of his relationship with the law firm that recommended him; (3) defendant owed a duty to the court, not the divorcing parties; and (4) the misrepresentation claim was simply a recasting of his negligence claim. Relying on P.T. v. Richard Hall Community Mental Health Care Center (P.T. II), 364 N.J. Super. 561 (Law Div. 2002) aff'd o.b., 364 N.J. Super. 460 (App. Div. 2003), the motion judge held defendant did not owe a duty to plaintiff, but rather to the children and the court.

Thus, plaintiff's unpled claim that defendant "exceeded the scope of his appointment" also failed.

## II.

We review de novo a trial court's ruling on a motion for summary judgment, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The court must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting R. 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev,

A-0043-24

225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

On appeal, plaintiff asks us to reverse the order because: (1) discovery was not complete; (2) the summary judgment motion was a "motion to dismiss in disguise" and should have been denied on that standard; (3) the motion judge interpreted and enhanced defendant's retention in the matrimonial matter; (4) the judge found respondent did not owe a duty to plaintiff; (5) the decision contravenes Rule 5:3-3 and N.J.R.E. 702; (6) defendant is not entitled to the

A-0043-24

litigation privilege; and (7) the fraud claim was sufficiently pled and even if it were not, the dismissal should have been without prejudice. We are not persuaded by these contentions and, given the motion judge's thorough and cogent analysis, our de novo review need not be extensive.

We are unconvinced the motion judge erred by determining, as a matter of law, whether defendant was a court-appointed expert pursuant to Rule 5:3-3(a) and (b). A party's entitlement to immunity is a legal issue that may be resolved on a summary judgment motion. Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000). Plaintiff's arguments, which mirror those advanced by the plaintiff in P.T. I, fail for the same reasons articulated by then Judge Hoens:

> [I]t is clear that the motion is ripe for adjudication at this time. The theory of the summary judgment motion is that [the defendant] enjoys absolute immunity, a theory which is based upon her status as a court-appointed expert and therefore, in essence, is one which can be decided without regard for the precise facts of what she did or did not do in that capacity. The theory of absolute immunity can be addressed without regard to the specifics of her engagement for it rests on the theory, urged upon the court by her counsel, that her appointment carried with it the protection ordinarily conferred on judges and others acting in a quasi-judicial capacity. Regardless of whether or not the court accepts this argument, the motion itself is based solely on two uncontested facts, namely, that she was appointed by court order to conduct an evaluation and render a report and recommendations and that she in fact thereafter did so pursuant to that order. Thus, the

9

motion is not premature and plaintiffs' argument in this regard is unpersuasive.

[364 N.J. Super. at 550-51.]

We are also unpersuaded the dismissal was premature based on incomplete discovery because "discovery need not be undertaken or completed if it will patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004). Here, no amount of discovery would have altered the fact that defendant was a court-appointed expert,[2] and plaintiff's contentions to the contrary lack any support in law or fact.

Plaintiff also raises several issues regarding the motion judge's separate reasons for dismissal of his fraud claim. These contentions lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). The entirety of plaintiff's complaint, no matter how interpreted or redrafted, arose from defendant's role as a court-appointed expert and was therefore subject to dismissal based on judicial immunity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[2] Rule 5:3-3(d) provides "[e]xperts appointed hereunder may be selected by the mutual agreement of the parties or independently by the court" and Rule 5:3-3(i) provides "the court may direct who shall pay" for the expert. Thus, the divorcing parties' mutual agreement to engage defendant, and their obligation to pay for his services, did not alter the nature of his appointment.

A-0043-24